ITT LIFE INSURANCE CORPORA-
TION, a Wisconsin corporation,
Plaintiff-Appellee,

v.

Naomi FARLEY, an individual,
Defendant-Appellant.

No. 83–2527.

United States Court of Appeals,
Tenth Circuit.

Feb. 18, 1986.

---

Elmore A. Page and Paul R. Hodgson, Inc., Tulsa, Okl., for defendant-appellant.

Carol Seacat of Seacat & Seacat, Okmulgee, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Plaintiff-appellee, ITT Life Insurance Corporation, brought this diversity action against the appellant, Naomi Farley, seeking reformation to correct the stated amount of insurance on a life insurance certificate issued to appellant's husband, Junior Farley. Appellant contended in response that reformation was barred by laches and the incontestability provisions of Oklahoma state statute and the policy itself. After trial to the district court, judgment was entered for the plaintiff reforming the Certificate of Insurance. The facts relevant to Mrs. Farley's appeal are as follows.

On September 21, 1977, Mr. and Mrs. Farley obtained a loan for $21,025.75 from Aetna Finance Company. The total amount repayable was $45,220.00 over ten years and the loan was secured by a mortgage on the Farleys' home and a security interest in the Farleys' automobiles and household items. As part of this loan arrangement, Mr. Farley applied for a policy of single decreasing term credit life insurance in the amount of $10,000. It was established that this was the maximum amount of insurance that Aetna Finance Company, ITT's agent, was permitted to write for a debtor at that time. The proper amount of premium payable for such a policy is $842.91. A form entitled "Insurance Requisition and Notice to Loan Applicant" stating $842.91 as the premium payable, the original amount of coverage as $10,000 and containing the initials "J.F." was entered into evidence. Also, a Federal Disclosure Statement dated September 21, 1977 and signed by both Mr. and Mrs. Farley revealed, along with the finance charges and total amount financed, that the original amount of the credit life insurance was $10,000.

Although the agent who initiated the policy on behalf of Aetna and ITT did not recall the events of September 21, 1977, Mrs. Farley testified that she arrived at the insurance office after her husband had and that he remained after she left and that she did not read any of the forms which she signed. She also testified that the insurance agent stated to her: "Don't worry Naomi. There's insurance on it."

Also issued on September 21, 1977 to Mr. Farley was a Certificate of Insurance.

However, the original amount of insurance stated on the Certificate was not the $10,-000 which was stated on the other forms and corresponded to the premium actually paid by Mr. Farley. The Certificate instead stated the original amount of insurance as $45,220.00 which corresponded to the total amount repayable under Mr. Farley's loan. This discrepancy was not detected by either party for over three years and after the death of Mr. Farley on October 1, 1980. Pursuant to the insurance contract ITT paid Aetna $6,974.92, the proper amount payable under a $10,000 decreasing term life insurance policy. The proceeds were credited to the Farleys' loan leaving a balance due of $13,334.67.

In its Findings of Fact and Conclusions of Law the District Court specifically found that the intent of the parties was to form a contract for single decreasing term credit life insurance in the original amount of $10,000 and that the amount of $45,220.00 typed on the Certificate of Insurance was a mutual mistake of a clerical nature. The court found that the Farleys did not rely on the erroneously stated amount of insurance coverage, and found that the insurance agent did not represent to the Farleys that the loan was fully insured. Finally, the court concluded that where there is clear unequivocal evidence of a clerical error or scrivener's mistake resulting in the inclusion of terms contrary to the clear intention of the parties, a court of equity will consider it a mutual mistake and will correct such errors.

Mrs. Farley appeals the district court judgment reforming the policy arguing that reformation such as that sought by ITT is barred in this instance both by application of the doctrine of laches and by operation of the incontestability provisions of the policy. Inclusion of the incontestability provision is required by Okla.Stat. Ann. tit. 36, § 4004, which states as follows:

"There shall be a provision that the policy (exclusive of provisions relating to disability benefits or to additional benefits in the event of death by accident or accidental means) shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two years from its date of issue."

The effect of such a provision is further delineated in Okla.Stat.Ann. tit. 36, § 4015, which states:

"A clause in any policy of life insurance providing that such policy shall be incontestable after a specified period shall preclude only a contest of the validity of the policy, and shall not preclude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage, whether or not such restrictions or exclusions are excepted in such clause; nor shall it be construed to preclude adjustment at any time of the amount payable or benefits accruing under the policy for misstatement of age, whether or not such age adjustment provision is excepted in such clause."

The policy in question fully complied with this statutory requirement with the inclusion of the following clause:

"This policy shall be incontestable with respect to the life insurance hereunder, except for nonpayment of premiums, after it has been in force for two (2) years from its date of issue; and no statement made by any Debtor insured hereunder relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force with respect to such Debtor prior to such contest for a period of two (2) years during the Debtor's lifetime nor unless such statement is contained in a written application signed by the Debtor."

Appellant contends that the doctrine of laches bars reformation of the Certificate of Insurance since three years passed between its issuance and Mr. Farley's death. Obviously, the death of Mr. Farley seriously hindered the ability of the appellant to make the loan payments and to obtain additional credit life insurance. However, appellant's proposed application of the doc-

trine of laches is inappropriate in these circumstances.

Appellant has asserted on appeal, contrary to the district·court's findings of fact, that the insurance agent represented to her that the loan would be fully covered by the insurance and that she relied on this representation to her detriment. Although the appellant does not specifically contend error in the findings of fact, these assertions are directly opposite to the factual findings of the trial court. In considering appellant's contentions on appeal we must apply Oklahoma law to the facts found by the trial court unless we conclude those findings of fact are clearly erroneous. Fed.R. Civ.P. 52(a). *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 901 (10th Cir.). Under this standard the district court's findings of fact will be disturbed only if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *Amoco Production Co. v. Western Slope Gas Co.*, 754 F.2d 303, 309 (10th Cir.); *Dowell v. United States*, 553 F.2d 1233, 1235 (10th Cir.). Our review of the record does not indicate that such a mistake has been made and we must accept the district court's factual findings.

As mentioned, appellant contends that reformation of the Certificate of Insurance is barred by the incontestability provisions of the Oklahoma statute and the insurance policy itself. A review of those provisions indicates that they operate to preclude contests of insurance policy "validity" after the policy has been in force for two years. Therefore, again adopting the district court's factual findings, the discrete legal issue presented is whether the appellee's suit to reform an insurance certificate to reflect the actual mutual intent of the parties is a challenge to the policy's validity within the meaning of the incontestability provisions of ·the policy and Oklahoma statute. If it is a challenge to the validity of the policy, it is barred. The trial court concluded that reformation is not barred in such an instance and we must agree.

There is no dispute as to the general availability of reformation as a remedy in instances where a term is erroneously included by reason of a scrivener's mistake. Such errors should be considered a mutual mistake and equity should correct such errors. *Davenport v. Beck*, 576 P.2d 1199, 1201 (Okl.App.). A party seeking reformation under Oklahoma law must show by proof that is clear, unequivocal, and decisive, and more than a mere preponderance, that a prior agreement existed and that the contract does not reflect that agreement because of fraud or mistake. *Agee v. Travelers Indemnity Co.*, 264 F.Supp. 322, 326 (W.D.Okl.). *See Evans v. Hartford Life Ins. Co.*, 704 F.2d 1177 (10th Cir.).

Although there are no Oklahoma cases interpreting the incontestability provisions in these circumstances, this court has previously addressed this specific issue. *Columbian Nat. Life Ins. Co. v. Black*, 35 F.2d 571 (10th Cir.). In that case, this court held "that an action to correct a purely clerical error in a policy issued, so that it will speak the truth as to the agreement of the parties, is not barred by the incontestable clause." 35 F.2d at 577. Although that case involved a Colorado insurance policy, its logic and result are persuasive in the interpretation of the Oklahoma incontestability provisions.

Appellant advances an argument based on a Ninth Circuit decision which equated .an action to reform a policy with a contest of its validity. *Richardson v. Travelers Ins. Co.*, 171 F.2d 699 (9th Cir.). We cannot agree with the conclusion in *Richardson* that the purpose of the incontestability clause was to enforce terms in an agreement which neither of the parties sought or consented to. The mutual mistake which occurred in the present case is much different from the inception defenses of fraud, breach of condition, misrepresentation, and lack of insurable interest which are cited in *Richardson*. 171 F.2d at 701. In those instances, one party would have sought inclusion of the terms later subject to incontestability and a suit to reform those terms would constitute a challenge to the validity of the agreement actually reached. In the instant case, neither party agreed to the insurance amount which was erroneously included in the certificate and refor-

mation here would effectuate the intent of the parties. ITT does not contest the validity of the policy and indeed has already paid the coverage agreed to by the parties. Such a result is consistent with the purpose of the statutory incontestability provisions. Thus, the incontestability provisions allow a policyholder to be confident that dependents would be provided with what the policyholder had bargained for and expected to receive.

As we recognized in *Columbian Nat. Life Ins. Co.*, it is possible that an actual contest could be prosecuted under the cloak of reformation. 35 F.2d at 577. However, we are confident that operation of the incontestability clause will not be avoided by semantics and artful pleading in those instances where its application was intended. Allowing reformation in this instance does not dilute the intended effect of the incontestability clause.

The judgment of the trial court is AFFIRMED.