No. 57,787

ORLANDO L. ANDRES, a single man; DORIS R. ANDRES, a single woman; WILLIS G. ANDRES and MARTHA LUCILLE ANDRES, husband and wife; *Plaintiffs-Appellees* and *Cross-Appellants,* v. ROLAND L. CLAASSEN, *Defendant-Appellant,* v. DONALD D. DANNAR and MARY B. DANNAR; husband and wife, *Third-Party Defendants,* and KANSAS DEPARTMENT OF TRANSPORTATION OF THE STATE OF KANSAS, *Third-Party Defendant-Appellee.*

(714 P.2d 963)

Opinion filed February 21, 1986.

*Michael S. Sizemore,* of Speir, Stroberg & Sizemore, of Newton, argued the cause and was on the briefs for appellant.

*Richard V. Foote,* of Matlack & Foote, P.A., of Wichita, argued the cause, and *Arnold C. Nye,* of Nye & Nye, of Newton, was with him on the brief for appellees and cross-appellants.

*Lisa E. Schwinn,* of the Kansas Department of Transportation, argued the cause, and *Michael B. Rees,* chief counsel, was with her on the brief for third-party defendant-appellee Kansas Department of Transportation.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the sellers of real estate against the buyer for the construction and reformation of certain deeds and for the recovery of actual and punitive damages for alleged misrepresentation and fraud on the part of the defendant/buyer. The plaintiffs/sellers are the members of the Andres family. The defendant/buyer is Roland L. Claassen. In the course of the proceedings, the buyer filed a third-party petition against Donald D. Dannar and his wife, Mary B. Dannar, and against the Kansas Department of Transportation (KDOT) to quiet his title to

certain land which the buyer contended was included in the purchase of real estate from the Andres family.

The case was tried to the court as a proceeding in equity. The trial court held in favor of the plaintiffs on their petition, granting reformation of the deeds but denying recovery of damages on the plaintiffs' claim of fraud. The buyer appealed and the sellers cross-appealed.

The facts in the case were not greatly in dispute. The trial court made comprehensive findings of fact and conclusions of law. The factual situation may be summarized as follows: The plaintiffs, the Andres family, for a number of years had been the owners of real estate located in the city of Newton in the NW ¼ of Section 28, Township 23 South, Range 1 East in Harvey County. The land is bordered on the west by what is known locally as old U.S. Highway 81 and on the east by I-135. The property was located with such close proximity to old U.S. Highway 81 and the new I-135 that it was in time subjected to five separate condemnation actions after old U.S. Highway 81 was expanded from a two-lane highway to a four-lane highway. After these various condemnation actions and a private sale to an individual, the Andres family owned the fee interest in a small frontage property located to the north of U.S. Highway 50, and along old U.S. Highway 81. This tract will be referred to in the course of the opinion as the "frontage property." The defendant Claassen was the owner of a lumber yard immediately east of this frontage property. Claassen had previously purchased this lumber yard property from the Andres family prior to 1972.

In addition to the frontage property, the plaintiffs owned a reversionary interest in a tract of land of about 44 acres lying south of Highway 50, which had been acquired by KDOT in the eminent domain proceedings mentioned heretofore. It is this 44-acre tract which is the subject of dispute in this litigation.

For a number of years prior to February 1979, the plaintiffs had attempted to sell the frontage property to the defendant, Roland D. Claassen. Attempts to sell the property occurred in 1970, 1972, and 1974. In 1974, the defendant made a written offer to purchase the frontage property, but the parties could not reach an agreement. In February 1979, the negotiations for sale of the frontage property occurred which brought about the present litigation. The plaintiffs listed the frontage property with a real-

tor, Jim Klaassen, with instructions to sell it for $90,400 to whomever wished to buy it. The realtor made numerous attempts to sell the property to the defendant, Roland D. Claassen. The defendant's response was that the asking price was too much money. At no time did the defendant and the real estate agent discuss the sale of any real estate other than the frontage property lying north of Highway 50. During the month of July 1979, the defendant told the real estate agent that he would make an offer to purchase the property for the sum of $87,500, and told the real estate agent to prepare the contract. A contract describing the frontage property was prepared and delivered to defendant, who advised the real estate agent that he wished to have his attorney examine the same and took the contract to him for that purpose.

When the defendant Claassen returned the contract to the real estate agent, he had made several minor changes therein not material in this case and, in addition, the following language was added to the description of the land to be sold:

"This proposal includes all land owned by sellers in above NW ¼, whether described herein or not."

At no time did the defendant make it known to the real estate agent or to the plaintiffs that the added language was to increase the quantity of real estate being sold by including the plaintiffs' reversionary interest in the 44-acre tract lying south of Highway 50. The attorney's suggested language used the words "including any reversion," but that language was changed to "and improvements thereon" when the contract was rewritten and retyped.

At no time did the defendant advise the real estate agent that the quantity of land had been increased. The real estate agent discussed the additional language with the defendant and concluded that the change in language was to clarify the existing description. The real estate agent then took the revised contract to the plaintiffs, who signed the same. Prior to signing the revised contract, the plaintiffs discussed the added language with the real estate agent, who informed them that it was for the purpose of clearing up any misdescription in the property to be conveyed.

The trial court found that, at the time of the execution of the contract, plaintiffs owned no other land in the Northwest

Quarter, but did have the possibility of a reverter in the 44 acres which had been condemned by the state of Kansas in the various condemnation cases. The plaintiffs did not understand the extent or nature of their actual rights in the 44 acres but believed that the Highway Department at some time in the future might reconvey the land to them. The plaintiffs did not understand that their "rights" amounted to the ownership of "land."

On November 28, 1979, the real estate transaction was closed, and plaintiffs delivered to the defendant two warranty deeds which had been prepared at the direction of defendant or his attorney. One deed contained in the description clause the following language:

"Together with any and all right, title or interest, present or contingent in the Northwest Quarter (NW ¼) of Section 28, Township 23 South, Range 1 East of the 6th P.M."

The trial court found that it was not the intention of the plaintiffs to convey any interest in the possible reversionary rights in the 44-acre tract lying south of Highway 50 which had been taken for highway purposes. The defendant Claassen testified it was his intent that the language include the reversionary interest south of the highway and that is the reason why the additional language was added by his attorney in the disputed contract and deed.

The trial court found that at no time in any of the negotiations for the purchase of the frontage property down through the years did the defendant make known that it was his intention to include the reversionary interest in the land lying south of the highway. At no time in the negotiations with the real estate agent, Jim Klaassen, that culminated in the sale did the defendant make his intentions known. The trial court found that the land lying south of Highway 50 was never a part of the negotiations between the parties and that plaintiffs listed for sale only the frontage property north of Highway 50 with the realtor. This land was the land the realtor knew was for sale and which he discussed with the defendant at numerous times and which the defendant purchased. The trial court concluded that it was the intent of the parties at this stage of the negotiations that the plaintiffs intended to sell and the defendant intended to buy only the frontage property. Only the price was yet to be nego-

tiated. The plaintiffs offered to sell the frontage land for $90,400. The defendant offered to buy for $87,500.

Defendant Claassen testified, in substance, that in all negotiations he knew that the realtor had for sale the frontage property and that he never mentioned the reversionary rights of the Andres family in the 44 acre highway tract. He testified that he had many opportunities to mention to the realtor that it was his intent to purchase not only the frontage property but the rights of the Andres family in the highway property to the south but he never discussed it. His explanation was that he "didn't feel it was necessary" or "it was none of his business."

The trial court construed the language added to the contract by the defendant to mean that it was for the purpose of correcting any possible defects of language in the description of the "frontage property" and did not include the reversionary interest in the land lying to the south of the highway. The court found that by reason of the intentions of the plaintiffs and the intentions and/or actions of the defendant, the plaintiffs were entitled to an order of the court construing and reforming the warranty deed to exclude from the conveyance any interest in the real estate lying to the south of Highway 50.

Before turning to the legal issues in the case, additional factual circumstances should be noted. The deeds in this case were signed on November 28, 1979, and thereafter, on October 2, 1980, the third-party defendants and appellees, Donald D. Dannar, and his wife, Mary B. Dannar, contracted to buy the interest of the Andres family in the disputed 44-acre tract south of the highway. On December 10, 1980, the Andres family gave the Dannars a warranty deed subject to the rights of the Kansas Department of Transportation. On January 23, 1981, the Dannars received a quitclaim deed to the property from KDOT. It was at this point that the conflicting claim of defendant Claassen to the 44-acre tract was discovered. On August 25, 1981, this action was filed, and the Dannars and KDOT were later brought in as third-party defendants. As noted heretofore, following trial to the court, the court entered judgment in favor of the plaintiffs construing and reforming the deed to exclude the 44-acre tract south of the highway. The trial court denied to plaintiffs a recovery of damages on their claim of fraud.

On the appeal, the defendant raises the following issues:

(1) The trial court's findings of fact are not supported by the evidence.

(2) The trial court erred in construing and/or reforming the deed by excluding the 44-acre tract south of the highway from the conveyance.

(3) The defendant's title to the disputed 44-acre tract should be quieted against the Dannars and KDOT.

(4) The trial court's finding that KDOT had acted reasonably was not supported by the evidence.

Plaintiffs raise two issues. They first contend that the defendant failed to perfect his appeal in time and, therefore, the Supreme Court lacks jurisdiction of the appeal. In their cross-appeal, the plaintiffs contend that the trial court erred in failing to award compensatory and punitive damages to the plaintiffs because of the defendant's misrepresentations and fraud.

We will first consider the jurisdictional issue raised by the plaintiffs that the appeal was not timely filed. We find no merit in this contention. The court filed its original journal entry of judgment in the case on December 12, 1984. On the same day, defendant Claassen filed objections to the proposed journal entry. Oral argument was held on the defendant's objections. On December 27, 1984, a journal entry was filed on defendant's objections. Notice of appeal was filed January 14, 1985. Under these circumstances, the notice of appeal was filed within the statutory 30-day period following the entry of final judgment. The objections to the journal entry constituted, in effect, a post-judgment motion to alter or amend the judgment. It was filed within ten days of the entry of judgment as required by K.S.A. 60-252 and 60-259. The filing of the post-judgment motion extended the time for filing the notice of appeal. Because the notice of appeal was filed within 30 days after the judgment disposing of defendant's objections to the journal entry, the appeal was timely filed, and this court has jurisdiction to consider the issues raised on the appeal.

We will next consider the defendant's contention that the trial court's findings of fact are not supported by the evidence. The established rule is that where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. The trial court's

conclusions of law will not be set aside unless clearly erroneous. *Woods v. Midwest Conveyor Co.*, 236 Kan. 734, Syl. ¶ 2, 697 P.2d 52 (1985).

When a verdict or judgment is attacked for insufficiency of the evidence, the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any substantial competent evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below. *Toumberlin v. Haas*, 236 Kan. 138, 689 P.2d 808 (1984).

Upon appellate review, this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which might be drawn therefrom. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, Syl. ¶ 2, 624 P.2d 420 (1981).

Applying these standards for appellate review to the record now before us, we have no hesitancy in holding that the findings of fact of the trial court are supported by substantial competent evidence.

The defendant's next point raised on the appeal is that the trial court erred in construing or in reforming the deed to exclude from the operation of the deed the 44 acres of land lying to the south of Highway 50. The defendant argues that the language used in the written deed was clear and unambiguous and included in the conveyance the title to *any property* owned by the Andres family located in the quarter section. The defendant also maintains in his brief that the trial court did not properly apply the remedy of reformation because, even if there was a mistake on the part of the plaintiffs as to the land to be conveyed, reformation could not be granted because there was never a *meeting of the minds* since the defendant/buyer at all times intended that the conveyance was to include the land lying south of the highway. Simply stated, the defendant maintains that equity cannot, under the guise of reformation, make an agreement of the parties where there was never a meeting of the minds. The defendant/buyer blames any misunderstanding on the negligence or recklessness of the Andres family in signing

the deed without determining the meaning of the added language.

The defendant further argues that there was no evidence or any finding by the trial court of a unilateral mistake on the part of the plaintiffs, or any evidence showing fraud on his part. Defendant denies any surprise or any fraudulent concealment of his desire to purchase the reversionary interest.

In its conclusions of law the trial court stated:

"6. That the plaintiffs not intending to sell any interest in the land South of the Highway and the fact that defendant knew this was the intent of the plaintiffs and kept silent about the effect of the added language upon the quantity of land described, the want of mutuality in the matter of the mistake can not stay the hand of a Court of equity to correct the documents.

"7. That the defendant knew the nature of plaintiffs' interest in the land South of the Highway and did know that they wanted to sell only the land North of the Highway."

The trial court in its opinion stated several factors which led it to the conclusion that the deed should be construed and reformed to convey only the frontage property and not to convey any interest in the 44-acre tract lying south of Highway 50. These factors were:

(1) Although defendant knew that it was the intent of the parties to sell only the frontage property, he never mentioned the property south of Highway 50 to either the plaintiffs or their real estate agent.

(2) Knowing that the plaintiffs intended to sell only the frontage property, defendant placed into the contract something that was not negotiated or discussed between the parties.

(3) The defendant demanded title evidence in the way of a title binder which covered only the land north of the highway, and no title evidence was ever requested or supplied as to any land located south of the highway. The defendant made no effort to make a title search as to plaintiffs' reversionary interest in the 44-acre tract south of the highway.

(4) The real estate purchase contract between the parties which was signed on July 28, 1979, contained the following provision:

"Undersigned agree that the value of the land and improvements on this *commercially zoned* property is as follows:

| | |
|---|---|
| "Station | $ 8,930.00 |
| "Restaurant | 7,440.00 |

| | |
|---|---|
| "Machine Shop | 9,680.00 |
| "Land | 61,450.00 |
| "Total | $87,500.00." |

The only commercial property was the frontage property. The property south of the highway was zoned residential. The $87,500 purchase price was thus allocated to cover only the value of the land and improvements on the frontage property.

We have considered the entire evidentiary record before us and the findings of fact and conclusions of law of the trial court. We have concluded that the district court properly determined the issues in the case and construed and reformed the deed to exclude from the operation of the deed any interest of the plaintiffs in the 44-acre tract south of the highway which was then held by KDOT.

It has long been the law that a written instrument may be reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him. Where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding. Thus, unilateral mistake may be the basis for relief when it is accompanied by the fraud of, or is known to, the other party. 66 Am. Jur. 2d, Reformation of Instruments § 28.

The Kansas cases have long adhered to the principle that an instrument may be reformed where there is ignorance or mistake on one side and fraud or inequitable conduct on the other. Silence by one party to a contract, with knowledge that the other party is mistaken and that the instrument as written does not express the true intention of the parties, may constitute a misrepresentation amounting to constructive fraud. In the early case of *Nairn v. Ewalt,* 51 Kan. 355, 32 Pac. 1110 (1893), this court stated:

" 'Misrepresentation may consist as well in the concealment of what is true as in the assertion of what is false. If a man conceals a fact that is material to the transaction, knowing that the other party acts on the presumption that no such

fact exists, it is as much a fraud as if the existence of such fact were expressly denied or the reverse of it expressly stated.' " pp. 358-59.

Other cases supporting these principles are *Cox v. Beard,* 75 Kan. 369, 89 Pac. 671 (1907); *Atkinson v. Darling,* 107 Kan. 229, 191 Pac. 486 (1920); *Hickman v. Cave,* 115 Kan. 701, 224 Pac. 57 (1924); *Federal Land Bank v. Bailey,* 156 Kan. 464, 134 P.2d 409 (1943).

In *Russell v. Ely,* 133 Kan. 318, 299 Pac. 619 (1931), it was held that an instrument, prepared by one party, not in accord with a prior written agreement of the parties as to its terms, when executed by the other without observing the mistake in the instrument, may be reformed where it is clearly shown that there was mistake on the part of one party and inequitable conduct of the other. The same rule is followed in *Mid-West Lumber Co. v. Wagner,* 133 Kan. 405, 300 Pac. 1067 (1931).

In the present case, the trial court found, in substance, that the plaintiffs never intended to sell their reversionary interest in the property south of the highway and that the defendant knew it. However, the defendant took the contract to his attorney and had language placed in the contract covering property not negotiated or discussed by the parties. He then remained silent and the plaintiffs were misled. We have no hesitancy in holding that there was evidence to establish ignorance and mistake on the part of the plaintiffs and, at the very least, inequitable conduct on the part of the defendant. We hold that the trial court did not err in construing and reforming the deed to exclude from the conveyance the 44-acre tract lying south of Highway 50.

In view of the court's determination of these issues, we hold that it is unnecessary to consider the other issues raised by the defendant pertaining to the third-party defendants, Donald D. Dannar and Mary B. Dannar, his wife, and the Kansas Department of Transportation.

On their cross-appeal, the plaintiffs contend that since the trial court found that the conduct of the defendant Claassen amounted to misrepresentation and fraud, it was error not to award compensatory and punitive damages to the Andres family. We construe the findings of fact and conclusions of law of the trial court to mean that the court did not find *actual* fraud on the part of the defendant but rather *constructive* fraud or *inequitable conduct.* Actual fraud has been defined as an intentional fraud, and the intent to deceive is an essential element thereof. Con-

structive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty of purpose or intent to deceive is necessary. *Loucks v. McCormick*, 198 Kan. 351, 424 P.2d 555 (1967).

We cannot say that the trial court erred in holding, in substance, that the conduct of the defendant amounted to constructive fraud or inequitable misconduct rather than actual fraud. In order to recover damages for actual fraud, it is necessary to show that the defendant had the intent to deceive. Because the trial court did not find specifically that the defendant had an intent to deceive the plaintiffs, we hold that the trial court did not err in denying to plaintiffs recovery of actual and punitive damages.

The judgment of the district court is affirmed on both the appeal and cross-appeal.

SCHROEDER, C.J., not participating.