Sue Garay CORCORAN, Plaintiff,

v.

SUPERTEL HOSPITALITY
MANAGEMENT, INC.,
Defendant.

No. 00–2321–JWL.

United States District Court,
D. Kansas.

Aug. 27, 2001.

Nathan C. Harbur, Leawood, KS, for plaintiff.

Daniel B. Boatright, Jeannie M. DeVeney, Spencer, Fane, Britt & Browne, Overland Park, KS, Nancy A. Wood, Berens & Tate, P.C., Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff filed this breach of contract action against defendant, plaintiff's former employer, based on defendant's alleged breach of a severance and release agreement executed by the parties. Defendant, in turn, has filed a counterclaim seeking reformation or rescission of the agreement. In brief, the parties' dispute con-

cerns the compensation provision in the agreement executed by the parties. Due to a typographical error made by defendant in the written agreement, the agreement provided that plaintiff would receive just over $375,000 in severance pay when defendant apparently intended to provide to plaintiff only $8000 in severance pay. Plaintiff contends that because of the circumstances surrounding her employment and the particular negotiations leading up to the agreement, she did not realize that defendant had made a mistake in the written contract. Stated another way, plaintiff contends that she believed that the written agreement accurately reflected defendant's intent with respect to the amount of severance pay.

This matter is presently before the court on defendant's motion for summary judgment (doc. # 56) and plaintiff's motion for summary judgment (doc. # 61). As set forth in more detail below, both motions are denied.

## I. Facts

Plaintiff worked for Supertel Hospitality, Inc. from May 1991 until October 1999, when Supertel Hospitality, Inc. merged with Supertel Hospitality Management, Inc. After that date, plaintiff continued as an employee of Supertel Hospitality Management, Inc., the defendant in this case.

In March 2000, plaintiff requested and received leave under the Family and Medical Leave Act. During the course of plaintiff's leave of absence, defendant contends that it sought to communicate with plaintiff concerning ongoing issues relating to her employment, including certain changes in plaintiff's position and job requirements. According to plaintiff, defendant repeatedly contacted and harassed plaintiff during her leave of absence about both employment-related and non-employment-related matters. In any event, it is undisputed that in late April 2000 or early May 2000, plaintiff's husband, Matthew Corcoran, indicated to defendant that defendant's future communications with plaintiff needed to be accomplished through him. Plaintiff alleges that this request was made due to defendant's ongoing harassment of plaintiff coupled with plaintiff's medical condition.

On May 5, 2000, defendant's President, Randy Smith, and Lori Clemons, defendant's Director of Human Resources, had a telephone conference with Mr. Corcoran. During that conversation, Mr. Corcoran asserted his belief that defendant had subjected plaintiff to a hostile work environment. Specifically, plaintiff contends that Mr. Corcoran articulated his belief that defendant was attempting to force plaintiff's constructive discharge on the basis of age and medical condition through its changes in plaintiff's job requirements while plaintiff was on medical leave and through its harassing phone contact and e-mail contact with plaintiff during her leave.[1] Mr. Corcoran then asked

1. Defendant contends that the court should disregard any facts concerning plaintiff's alleged constructive discharge because plaintiff's allegations in this regard amount to "nothing more than a speculative conclusion" and "therefore does not raise a material issue of fact." Defendant's argument is misplaced. For purposes of this case, plaintiff's subjective belief that she was being constructively discharged is relevant because it supports her contention that she did not realize that defendant had made a mistake in the written agreement. In other words, according to plaintiff's evidence, she was not surprised that the agreement contained an amount far greater than defendant's normal severance pay because she believed that such an amount was justified in light of her claims concerning her

Mr. Smith and Ms. Clemons what amount of severance pay plaintiff would be eligible for if she separated from employment with defendant. Mr. Smith responded that defendant's "normal" or "standard" severance pay policy was to provide one week of severance pay for each year of service. Mr. Corcoran expressly rejected this suggestion and indicated that such a proposal was "a joke." When Mr. Corcoran inquired as to whether the amount of severance was negotiable, Mr. Smith responded that it was not. Mr. Smith and Ms. Clemons also told Mr. Corcoran that defendant had no knowledge of plaintiff being subjected to a hostile work environment during her employment.

On May 8, 2000, Mr. Corcoran left a voice mail message for Ms. Clemons inquiring as to whether defendant would consider an amount of severance that was greater than one week of pay for each year of service. According to defendant, Mr. Corcoran stated that "surely two or three weeks of severance for each year of service would be more reasonable than spending between two hundred and two hundred and fifty thousand on a lawsuit." While Mr. Corcoran does not recall making such a statement, it is undisputed that he contacted Ms. Clemons to inquire whether a settlement could be reached to avoid litigation.

About a week later, Ms. Clemons responded to Mr. Corcoran's message by reiterating that one week of severance for each year of service was the maximum that defendant would pay. Defendant contends that Mr. Corcoran asked Ms. Clemons to forward him a severance agreement embodying these terms. Plaintiff denies

that Mr. Corcoran ever asked Ms. Clemons to forward an agreement that embodied those terms. During this same time frame, Mr. Corcoran left another voice mail message for Ms. Clemons in which he provided additional details to Ms. Clemons about the alleged sexual harassment of plaintiff by a coworker. According to defendant, Mr. Corcoran, in his voice mail message, again requested a severance agreement be forwarded to him for review and inquired about the number of years plaintiff had worked for defendant. Shortly thereafter, Ms. Clemons returned Mr. Corcoran's call. According to defendant, Ms. Clemons advised Mr. Corcoran that because plaintiff had worked for the company for just under ten years, defendant would pay her ten weeks of severance. Plaintiff denies that Ms. Clemons stated during this conversation that defendant would pay only ten weeks of severance pay.

On May 16, 2000, Ms. Clemons faxed a draft of a two-page severance agreement to Mr. Corcoran. According to Mr. Corcoran, he immediately reviewed the compensation formula contained in the proposed agreement. The agreement stated that plaintiff would be entitled to one week of severance for each *week* of service, as opposed to one week of severance for each *year* of service. By contrast, the transmittal letter that accompanied the proposed agreement specifically explained that the draft agreement contained "Supertel's standard settlement terms" and that because "[plaintiff] has been employed with Supertel for just under ten years ... we would provide ten weeks of severance." According to plaintiff, Mr. Corcoran did

employment. Thus, while plaintiff's evidence might be insufficient to prove the merits of a constructive discharge claim, it is probative

concerning her state of mind with respect to the settlement amount.

not notice any discrepancy between the contract and the transmittal letter and it is unclear from the record whether, when and to what extent Mr. Corcoran read the transmittal letter. Defendant contends that the "for each week of service" language in the compensation formula set forth in the agreement was a typographical error of which Ms. Clemons was not aware. According to plaintiff, Mr. Corcoran did not question the amount in part because he had recently provided additional details with respect to plaintiff's sexual harassment allegations.

On May 17, 2000, Mr. Corcoran left a telephone message for Ms. Clemons in which he asked her to change two provisions of the agreement. Specifically, Mr. Corcoran requested a modification to the choice-of-law provision and requested that the number of days allowed for the return of company property be extended from three days to five days. Ms. Clemons made the changes requested by Mr. Corcoran and faxed the agreement to him for approval. After Mr. Corcoran indicated his approval of the revised agreement, Ms. Clemons forwarded an original revised agreement directly to plaintiff for her signature. Plaintiff reviewed the contract for the first time, signed it on May 22, 2000, and then sent it back to Ms. Clemons. Pursuant to the agreement, plaintiff voluntarily resigned her employment, released all potential claims against defendant and returned all company property.

Consistent with what defendant represents as its understanding of the terms of the agreement, defendant issued a check to plaintiff in an amount equivalent to ten weeks of service, or $8022.10. On June 5, 2000, Mr. Corcoran left a message for Ms. Clemons indicating that the amount of the severance check was incorrect. After verifying with defendant's payroll department that the correct amount had been paid, Ms. Clemons returned Mr. Corcoran's phone call. During the subsequent telephone conversation, Mr. Corcoran pointed out that the severance agreement stated that plaintiff would receive a week of severance pay for each week of service. According to defendant, this is the first notice that defendant had concerning the typographical error.

Plaintiff now seeks to recover the amount set forth in the agreement-a total of one week of pay for each week of service, or $376,325.60. Defendant asserts that it is entitled to reformation or rescission of the contract based upon the theories of contract reformation and constructive fraud.

## II. Summary Judgment Standard[2]

■ Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538

2. Plaintiff and defendant have filed motions for summary judgment. The court will address the motions together. The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir.2000).

(1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

As mentioned above, both parties have moved for summary judgment. Defendant contends that it is entitled to summary judgment reforming or rescinding the severance agreement to the extent that the agreement purported to provide to plaintiff one week of severance for each week of service. According to defendant, reformation is required because the parties made a mutual mistake as to the terms of the contract. In the alternative, defendant contends that reformation or rescission is required because defendant made a mistake in the written agreement and plaintiff knew of the mistake yet fraudulently or inequitably failed to inform defendant of the mistake. Plaintiff, in turn, contends that she is entitled to summary judgment enforcing the agreement because, in the absence of mutual mistake or fraud, Kansas law does not permit reformation or rescission of a contract. As set forth in more detail below, there is no evidence before the court suggesting that a mutual mistake occurred. Thus, defendant's motion for summary judgment is denied to the extent it is based on the theory of mutual mistake. Moreover, while the record clearly suggests that a unilateral mistake occurred on the part of defendant, genuine issues of material fact exist with respect to whether plaintiff knew about the mistake at the time she executed the contract and sought to take advantage of that mistake such that the contract should be reformed or rescinded. For this rea-

son, both motions for summary judgment are denied.

## A. Mutual Mistake

 In its motion for summary judgment, defendant initially argues that there was a "mutual mistake" with respect to the terms of the contract because defendant believed that the agreement was for one week of severance for each year of service while plaintiff believed that the agreement was for one week of severance for each week of service. According to defendant, then, the agreement cannot be enforced. Defendant misconstrues the nature of a "mutual mistake" under contract principles. A mutual mistake occurs when both parties are under substantially the same erroneous belief as to the facts. E. Allan Farnsworth, *Contracts* § 9.3 (2d ed.1990); *accord* PIK–Civil 3d 124.05(a) ("A party may be relieved of (his)(her) contractual responsibility if the same mistake was made by both parties concerning a basic assumption or material fact upon which the contract was based."). By contrast, if both parties are mistaken, but their mistakes are materially different, the case is one of unilateral mistake. Farnsworth, *supra,* at § 9.3 n. 1. Here, defendant claims that it believed the agreement was for one week of severance for each year of service. Plaintiff, however, claims that she believed that the agreement as written reflected the intent of the parties-one week of severance for each week of service. Thus, any mistake was unilateral in nature. *See Albers v. Nelson,* 248 Kan. 575, 580–81, 809 P.2d 1194 (1991) (no mutual mistake as to the terms of a contract where one party believed the agreement was for the outright sale of land and the other party believed the transaction represented a loan secured by collateral; any mistake was unilateral in nature).[3] In short, the record before the court fails to establish that a mutual mistake occurred. Defendant's motion for summary judgment is denied to the extent it seeks reformation on the theory of mutual mistake.[4]

## B. Unilateral Mistake.

Defendant next contends that it is entitled to reformation or rescission based on

---

3. In a related vein, defendant directs the court to the Tenth Circuit's opinion in *ITT Life Insurance Corp. v. Farley,* 783 F.2d 978, 981 (10th Cir.1986), where the Circuit observed that "there is no dispute as to the general availability of reformation as a remedy in instances where a term is erroneously included by reason of a scrivener's mistake" and that "such errors should be considered a mutual mistake and equity should correct such errors." In *ITT,* however, neither party had agreed to the insurance amount which was erroneously included in the certificate and, thus, reformation of the contract effectuated the intent of the parties. *See id.* at 981–82. By contrast, plaintiff here claims that she believed the severance amount as set forth in the agreement reflected the parties' intent. For this reason, the "scrivener's error" doctrine does not apply to the facts before the court. *See also Torre v. Federated Mut. Ins. Co.,* 854 F.Supp. 790, 830 n. 44 (D.Kan.1994) (under doctrine of scrivener's error, the mistake of a scrivener may be reformed provided the mistake does not reflect the intent of the parties) (citing *International Union v. Murata Erie North America,* 980 F.2d 889, 907 (3d Cir.1992)).

4. Defendant's mutual mistake theory might be viable if the record contained evidence of a prior oral agreement between the parties coupled with evidence that plaintiff did not realize that the contract did not accurately reflect the parties' agreement until after she executed the contract. While defendant's evidence suggests that the parties may have had a prior oral agreement concerning the amount of settlement, the undisputed evidence is that both plaintiff and her husband closely examined the compensation provision of the contract prior to execution and, thus, clearly knew the contents of the contract prior to execution. Thus, the court discerns no viable mutual mistake defense.

the theory of unilateral mistake coupled with plaintiff's fraudulent or inequitable conduct. *See Andres v. Claassen,* 238 Kan. 732, 740, 714 P.2d 963 (1986) ("It has long been the law that a written instrument may be reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him."). In response to defendant's motion and in support of her own motion for summary judgment, plaintiff concedes that defendant may have made a mistake but argues that the contract must nonetheless be enforced because the record shows no fraud or inequitable conduct on her part (*i.e.,* according to plaintiff, she thought the contract as written reflected defendant's intent). *See Albers v. Nelson,* 248 Kan. 575, 580, 809 P.2d 1194 (1991) ("As a general rule, . . . in the absence of fraud, a unilateral mistake will not excuse nonperformance of a contract.") (citing cases). As described in more detail below, both motions are denied.

■ According to defendant, the uncontroverted facts demonstrate that plaintiff knew of defendant's mistake in the written agreement and yet said nothing about that mistake in the hopes of taking advantage of defendant's oversight. In support of its argument, defendant urges that the only settlement offer it ever communicated to plaintiff or plaintiff's husband was ten weeks of severance and that the transmittal letter accompanying the proposed agreement referenced ten weeks of severance pay.[5] Defendant maintains that, in light of such circumstances, it is simply not possible that plaintiff did not know that defendant had made a mistake in the written agreement. In fact, defendant suggests that the parties had an oral agreement concerning the amount of severance. Defendant's arguments, however, ignore plaintiff's evidence concerning the transaction. According to plaintiff, she believed that defendant intended to pay her far more than its standard severance (*i.e.,* the amount set forth in the written agreement) for a variety of reasons, including defendant's notice of plaintiff's complaints of defendant's sexual harassment, constructive discharge, age discrimination and FMLA violations; the fact that her husband had explicitly rejected defendant's initial offer of ten weeks of severance; and because plaintiff had no reason to think that defendant's agents would not have read and reviewed the terms of the two-page contract at least one time during the course of three drafts of the agreement. In short, plaintiff contends that the large settlement amount was justified by defendant's mistreatment of her and that, accordingly, she did not question the amount. Clearly, then, factual issues exist with respect to whether plaintiff actually knew that defendant had made a mistake in the written settlement agreement and defendant's motion for summary judgment must be denied.[6]

■ Similarly, plaintiff's motion for summary judgment must be denied to the

---

5. While offering her own extrinsic evidence regarding her intent, plaintiff suggests that defendant's evidence concerning the transmittal letter is inadmissible parol evidence. This argument lacks merit. *See, e.g., Rosenbaum v. Texas Energies, Inc.,* 241 Kan. 295, 298, 736 P.2d 888 (1987) ("The rule that parol evidence is inadmissible to contradict or vary a written contract presupposes an action involving a valid existing obligation.").

6. In fact, the two cases upon which defendant primarily relies in support of its motion (cases which defendant contend mandate reformation) were resolved only after a bench trial. *See Andres v. Claassen,* 238 Kan. 732, 714 P.2d 963 (1986) (affirming trial court's refor-

extent plaintiff claims that the uncontroverted facts demonstrate that she did not know that defendant had made a mistake in the written agreement. As just explained, defendant's evidence suggests that plaintiff or plaintiff's husband had reason to question the payment formula as set forth in the agreement. A trial, then, is required to determine the nature and extent of plaintiff's knowledge concerning whether the payment formula as set forth in the written agreement accurately reflected the intent of the parties. If the court, as the finder of fact, concludes after a full trial on the merits that the parties had a prior oral agreement concerning the amount of severance and that plaintiff or her husband knew at the time of execution that the written agreement contained a mistake that did not reflect the parties' prior agreement, then defendant would be entitled to reformation of the contract consistent with the parties' prior agreement. If, however, the court concludes that the parties did not reach an oral agreement on the issue of severance prior to the execution of the written agreement, but that plaintiff nonetheless knew that the written agreement contained a mistake and sought to take advantage of that mistake, then defendant would be entitled to rescission of the contract. *See Jones v. Reliable Security Incorporation, Inc.*, 28 P.3d 1051, 1063 (Kan.Ct.App.2001) ("The purpose of reformation of a contract is not to make a new contract or to supply terms upon which the minds of the parties have not met.") (citing *Jones v. Crowell*, 164 Kan. 261, 264, 188 P.2d 908 (1948)). Finally, of course, if the court concludes after a full trial on the merits that plaintiff did not realize that the written agreement con-

tained a mistake, then defendant would not be entitled to any relief absent a showing of undue hardship. *See Squires v. Woodbury*, 5 Kan.App.2d 596, 599, 621 P.2d 443 (1980) (in the absence of fraud, a unilateral mistake is insufficient to relieve the mistaken party from the terms of an agreement, but unilateral error *may* be a good defense to a contract where hardship amounting to injustice would be inflicted by holding a party to the agreement, and where it would be harsh and unreasonable to enforce the agreement) (citing cases).

In sum, both plaintiff's and defendant's motions for summary judgment are denied in light of the factual disputes regarding whether plaintiff knew that defendant had a made a mistake with respect to the payment formula set forth in the written severance agreement.

## C. Plaintiff's Remaining Arguments

■■■ Plaintiff moves for summary judgment on two alternative grounds. First, plaintiff contends that even if she knew that defendant had made a mistake at the time she executed the agreement, she nonetheless is entitled to summary judgment enforcing the contract because she had no duty to disclose to defendant the mistake in the contract. The court easily rejects this argument as the argument finds no support under Kansas law. As the Kansas Supreme Court has recognized:

Where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this

mation of contract after bench trial); *Lloyd v. Horn, Inc.*, No. 95–CV–2549 (D.Kan. Sept. 16, 1996) (transcript from hearing during which

Judge Vratil ruled on the record after a bench trial that the contract would be reformed).

mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding. Thus, unilateral mistake may be the basis for relief when it is accompanied by the fraud of, *or is known to,* the other party.

*Andres v. Claassen,* 238 Kan. 732, 740, 714 P.2d 963 (1986) (emphasis added). The rule as stated by the court in *Andres* is also in substantial accord with the relevant Restatement provision:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
>
> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>
> (b) the other party had reason to know of the mistake or his fault caused the mistake.

Restatement (Second) of Contracts § 153 (1981); *accord* Farnsworth, *supra,* at § 9.4 ("If the mistake is known to the other party, it is clear that the [other party] is not bound to perform."); PIK–Civil 3d 124.05(b). In short, plaintiff's argument concerning her duty to disclose is rejected.

■ Plaintiff's second alternative argument, while not entirely clear, is apparently that defendant is barred from any relief because of its own negligence or fault in failing to read the relevant contract provisions or inserting the incorrect provision in the contract. This argument is also not supported by law and, thus, the court re-

jects it. *See* Farnsworth, *supra,* at § 9.4 (a party "is not barred from relief for mistake merely because [he or she] could have avoided it by the exercise of reasonable care"); Restatement (Second) of Contracts § 157 (1981) ("A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation . . . unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.").

In short, plaintiff's motion for summary judgment on these two alternative bases is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 56) is **denied** and plaintiff's motion for summary judgment (doc. # 61) is **denied.**

**IT IS SO ORDERED.**