No. 32,853

L. M. Graham, *Appellee*, v. A. D. Updegraph, *Appellant*.

(58 P. 2d 475)

Opinion filed June 6, 1936.

*H. W. Hart, Glenn Porter, Enos E. Hook* and *Getto McDonald,* all of Wichita, for the appellant.

*Morris H. Cundiff,* of Wichita, and *John L. Gleason,* of Oklahoma City, Okla., for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for wrongful death caused by the alleged tort of defendant. Judgment was for plaintiff, overruling a demurrer of defendant to the petition. Defendant appeals.

The petition was filed by plaintiff to recover damages for the death of his wife, alleged to have been caused by the negligence of defendant, a physician and surgeon. It alleged that before being treated by defendant deceased was an ordinary, healthy woman; that about January 1, 1929, deceased felt an indisposition; that she, with the consent of plaintiff, called defendant, who was a physician and surgeon; that defendant examined deceased and advised plaintiff and deceased that she had a cancerous condition of the uterus and advised her that radium treatment was necessary; that he advised plaintiff and deceased that it would be advisable to insert in the uterus of deceased ten radium beads approximately three six-

teenths of an inch in length and about one thirty-second of an inch in diameter; and that the usual way of applying this treatment was to attach each of the beads to a string and to insert each bead into the uterus and leave the strings extending outside. It then alleged that neither plaintiff nor deceased knew anything about radium treatment and that they so advised defendant. The petition then alleged that on or about January 18, 1929, defendant applied the radium to deceased by inserting ten radium beads in the uterus; that the proper application of the treatment required that commencing on the day after the insertion of the beads, one of them should be removed from the uterus each succeeding day until the ten beads were removed; that the removal was made by pulling the string attached to each bead; that defendant personally undertook the removal of the beads and at the expiration of ten days after the insertion of the beads he advised plaintiff and deceased that all of the beads had been removed, and under the advice of defendant deceased was removed to her home, and defendant advised plaintiff to watch for the excretion of what defendant said would be the remnants of the cancerous growth.

The petition then alleged that although defendant did insert ten radium beads he never removed but six; that four of the beads remained until on or about January 15, 1935, when one of the capsules passed from the uterus of deceased.

The petition then alleged that the effect of bringing radium into contact with the tissues of the body was to cause a burning of the tissues; that this effect was well known to defendant; that the effect of leaving the radium beads in the uterus without being controlled by a string is that the beads will migrate in the body; that in their migration they will burn and sear the tissues with which they come in contact; that if they come in contact with nerve tissues they will cause a disturbance which will result in pain; that if they come in contact with the intestine in all probability they will puncture the intestine and cause peritonitis; that all of this was well known to defendant. The petition then alleged that the treatment described requires extreme care and skill.

The petition then alleged that the permitting of the beads to remain in the body of deceased resulted in the beads migrating, causing a burning of the tissues; that the beads burned one of the intestines of deceased, which resulted in peritonitis, on or about March 1, 1935, and caused the death of deceased about March 18, 1935;

that it also resulted in burning the several nerves of the body of deceased, especially the sciatic nerve; that it further resulted in the burning and the gathering of a large quantity of burnt tissue in the region of the pelvic arch of deceased, which resulted in periodic loss of the use of the left leg of deceased, and this resulted in her being unable to walk for two years before her death. It was further alleged that the immediate results of permitting the beads to remain in the body of deceased was to destroy her healthy condition, and to cause an unhealthy condition for a period extending from about January 15, 1929, to the time of her death; that by reason thereof plaintiff lost the value of the services of defendant, together with her companionship; that the value of these things so lost was $6,200; that an effort was made to overcome the results of the condition so created, which caused plaintiff to expend $1,400 in doctor bills, hospital bills, nurses' services and medicines; that the life expectancy of deceased was such that had she lived the value of her services to plaintiff would have been worth $10,000.

The petition then alleged that the defendant acted negligently in applying the radium treatment to deceased; that such negligence consisted in not having the strings attached to the beads so that they would not be lost or pulled into the uterus and there remain and rot. The petition then contained the following allegation:

"He was further negligent in that after discovery that the strings to four of said beads had been pulled into the uterus, he did not advise this plaintiff or the said patient of such fact and he did not take any means or steps for recovering such strings or said beads."

The petition then contained a statement that plaintiff alleged "on information and belief" that defendant did discover the loss of the strings of the four beads, and he discovered the fact that the strings had been pulled into the uterus after the beads before the patient was removed to her home from the hospital. The petition then contained the following allegation:

"That if he did not so discover such fact then this plaintiff alleges that he was further negligent in that he did not keep proper count of the strings and he was negligent in failing to discover such fact."

The petition then contained the following allegation:

"Plaintiff further alleges that in the matter of advising this plaintiff and the said patient of the progress of such treatment, he acted as the physician of the patient and of this plaintiff, and it became and was his duty to ascertain and know when each of the ten several radium beads were removed from the uterus of the patient, and to advise this plaintiff truthfully of such fact and

facts; it became and was further his duty to advise this plaintiff if and when he discovered that certain of any of such beads were not removed from the body of the patient; and if and when any of the strings of said beads became lost, it became and was his duty to advise this plaintiff and said patient of such fact; if occasion arose whereby it was impossible for him to remove any of such beads from the uterus of the patient it then became and was his duty to advise this plaintiff of such fact; the said defendant did undertake to advise and he did advise this plaintiff before February 10, 1929, that all of said radium beads had been removed from the body of the said patient; that this plaintiff relied upon said statement and believed that the said defendant was telling him the truth; that in truth and in fact such statement was not true and the defendant then knew it was not true; that this plaintiff did not discover that such information so given him by the defendant was not true until on or about January 15, 1935, when there passed from the uterus of the said patient, a mass of broken tissue in which was embedded one of the aforesaid radium beads which had been inserted in the uterus of the patient by the defendant in January, 1929; that afterwards and on or about the 16th day of March, 1935, an operation upon the abdomen of the patient was performed at Wichita, Kan., and a second of said radium beads so inserted by the defendant as aforesaid, was discovered among the vital organs of the patient; that such bead had, as stated aforesaid, punctured one of the intestines of the patient and caused peritonitis; that all of the conditions of ill health and all of the items of damage hereinbefore set forth, as suffered by this plaintiff, were caused and were the natural and proximate result of the aforesaid negligence of the defendant, and that by reason thereof, plaintiff had been damaged in the sum of seventeen thousand six hundred dollars, actual damage."

The petition then alleged facts as the basis of exemplary damages in the amount of $5,000, and that he was the sole heir of deceased.

The petition prayed damages in the sum of $17,600 actual damages and $5,000 exemplary damages.

To this petition defendant filed a general demurrer on the ground that it did not state a cause of action and that the pretended cause of action was barred by the two-year statute of limitations. This demurrer was overruled. From that judgment this appeal is taken.

The only ground urged by the defendant in this court is that the action was barred by the two-year statute of limitations.

The position of defendant is that the cause of action accrued when, at the expiration of ten days from the insertion of the beads in the uterus, he failed to remove the last one; that the statute started to run then and nothing tolled it, and hence the action was barred in the two years after about January 28, 1929, or many months before this action was begun.

The plaintiff relies on three grounds to establish his right to bring his action when it was brought. The first is that there was a fidu-

ciary relationship between defendant and deceased in regard to the treatment of deceased; that the defendant deceived deceased by concealing the fact that he had not taken the beads out, hence the statute of limitations did not begin to run until deceased or plaintiff discovered that the beads had been left in.

At the outset, plaintiff concedes the rule to be that when there is no fiduciary relationship between plaintiff and defendant, concealment by the defendant of the facts constituting the cause of action does not suspend the running of the statute. He points out his allegations of a fiduciary relationship between deceased and defendant. He relies upon the holding of this court in the case of *McMullen v. Loan Association*, 64 Kan. 298, 67 Pac. 892. That is a case where a secretary of a building and loan association defaulted. Action on his bond was begun more than six years after the defalcation. The defense of the statute of limitations was raised. This court pointed out that the petition alleged that the secretary "artfully and fraudulently concealed his misappropriations by making false entries in his book." This court then pointed out that McMullen was a trusted agent of the association and that his misconduct and default was a breach of the relation of trust and confidence and that the statute did not begin to run until the breach of trust occurred and was brought to the knowledge of the association. Plaintiff points out that the petition in this case alleged that the defendant was the family physician of plaintiff and deceased and had knowledge of the effect of the insertion of radium into the human body, while plaintiff and his wife had no knowledge of such effect. He argues that such an allegation brings this case within the rule as to the relationship between the parties that was laid down in the case of *McMullen v. Loan Association*, supra.

This court has passed on the question of what sort of an action arises when a surgeon is sued for malpractice. In *Ericson v. Charles*, 108 Kan. 205, 194 Pac. 652, a surgeon was sued in two counts. One count set out a specific contract to operate for a stated sum, and alleged the breach of that contract. The second count alleged that the defendant in disregard of his duty as a surgeon performed an operation in an improper manner. The first count was not before this court. The second count was in substantially the language used in this case. This court examined the second count and said: ·

"Here the averments in the count are those stated in an ordinary petition for malpractice and are such as to characterize it as an action *ex delicto*." (p. 207.)

The court further said:

"She sets forth a cause of action based on a violation of the duty of the defendant as a surgeon and the wrongs done to her by him in the negligent performance of an operation and that is manifestly one arising *ex delicto*." (p. 208.)

This case is of interest to us because it is a holding that in the ordinary case where a surgeon performs an operation and damage results therefrom to the patient the cause of action, if any, which arises against the surgeon is an action "for injury to the rights of another." In the case of *Travis v. Bishoff*, 143 Kan. 283, 54 P. 2d 955, the action was in form for breach of a contract to perform an operation and the violation of the agreement. This court swept aside the allegations as to a contract and held that the action was one arising in tort. The court said:

"The contract which plaintiff says he made with defendant was a contract to perform an operation according to good surgical practice, a method which defendant, as a surgeon, was obliged to follow in any event, without any contract. Defendant's fault lay in the fact he failed to perform the operation in accordance with good surgical practice. Plaintiff suffered the damages which characteristically flow from malpractice.

"The law of this state is realistic. Substance prevails over form. It is perfectly manifest that, notwithstanding the form given to the petition, the gravamen of the action was malpractice, which is a tort, and the action was barred by the two-year statute of limitations." (p. 285.)

We thus see that a case such as that pleaded in the petition is a cause of action for "injury to the rights of another" commonly called a tort (see R. S. 60-306, subdiv. 3), and must be brought within two years of the time when the tort was committed.

The question of whether concealment of a cause of action tolls the running of the statute of limitations was considered in the case of *City of Coffeyville v. Metcalf*, 134 Kan. 361, 5 P. 2d 807. There the action was on the bond of the water and light collector of the city. The action was brought more than three years after the delict. It was held to be an action to recover on a statutory liability and had to be brought within three years. The trial court instructed the jury correctly as to the statute except that the jury was told that if they believed that defendant had concealed the shortage the statute would not have run. This court examined the authorities and reached the conclusion that the instruction was erroneous and that concealment of a cause of action arising on a statute no more tolled the statute of limitations than concealment of a cause of action arising on con-

tract. *Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051, was cited as authority for that rule.

This question was examined further in the case of *State, ex rel., v. McKay*, 140 Kan. 276, 36 P. 2d 327. This was an action on the bond of a defaulting county treasurer. The petition alleged that the treasurer by certain false entries, statements and reports fraudulently concealed the embezzlement and conversion to her own use of $8,365.81. This court held that the wrong of the county treasurer was her failure to pay her successor in office the full amount she should have paid; that the action was on a statutory liability and the three-year statute of limitations applied. The plaintiff pointed out the allegations of fraud and concealment on the part of the county treasurer and argued that the action was one for relief on the ground of fraud and that it might be brought within two years after the fraud was discovered. (R. S. 60-306, *third.*) In that case the court reviewed the authorities in this state on the subject. There, as in this case, it was pointed out that it was not necessary to allege fraud in order to state a cause of action or to prove fraud to establish it. The facts necessary to establish a cause of action had all transpired when the tenth day passed and all of the radium beads were not removed. It is not deemed necessary to set out all the authorities cited and relied on in the opinion in that case. This court has consistently held to that effect from a very early day. In a number of cases the opinion in the case of *McMullen v. Loan Association*, supra, is cited and distinguished. Indeed, it is doubtful if that case has ever been followed since it was written.

The next point upon which plaintiff relies to maintain his argument that the action was brought in time is that by the combined negligence of defendant in not adjusting the strings attached to the beads so that they would not slip into the uterus, and his deception of plaintiff, defendant set up a condition in the body of deceased analogous to the condition where one sets up a nuisance in the vicinity of another's land. It is argued that in such a case the cause of action does not accrue until it becomes obvious to the plaintiff that damage will result. (See *Gardenhire v. Sinclair-Prairie Oil Co.*, 141 Kan. 865, 43 P. 2d 1064.)

This court has considered this question heretofore.

In *Becker v. Porter*, 119 Kan. 626, 240 Pac. 584, the case was one where a dentist had treated a tooth and while drilling it had left a part of the drill in the root of the tooth. It was alleged that the

negligence was not discovered by the plaintiff until more than two years after the drill was left in the tooth and that the defendant treated plaintiff during all that time. The trial court overruled a demurrer to the petition on the authority of *Gillette v. Tucker*, 67 Ohio St. 106, 65 N. E. 865. That was a case where a surgical sponge was left in the body and remained there for many months after the relation of patient and surgeon ceased. The Ohio court held that the statute of limitations did not begin to run in favor of the surgeon until the termination of such relation because, until that time, it was his constant duty to remove such sponge. When the case of *Becker v. Porter*, supra, reached this court the decision of the trial court was reversed on the authority of *McArthur v. Bowers*, 72 Ohio St. 656, 76 N. E. 1129. In that case the Ohio court overruled *Gillette v. Tucker* and held the statute started to run when the tort was committed. This case was later overruled in the case of *Bowers v. Santee*, 99 Ohio St. 361, 124 N. E. 238. However, we still adhere to the rule announced in *Becker v. Porter*, supra, that the statute of limitations in an action for tort begins to run from the date of the tort and not from the date of the discovery of it. (See *Railway Co. v. Dale*, 68 Kan. 108, 74 Pac. 596.)

In *Capucci v. Barone*, 266 Mass. 578, 165 N. E. 653, the action was to recover damages sustained on account of leaving a sponge in the abdominal cavity after an operation. If the cause of action accrued when the sponge was left in then the statute had run. If it did not accrue until it was discovered the action was brought in time. The court held that the action was barred, and said:

"Upon this branch of the defense the single question is, when did the cause of action accrue? The defendant, as a surgeon, on May 11, 1924, impliedly undertook to use care in the operation which he was about to perform. Any act of misconduct or negligence on his part in the service undertaken was a breach of his contract, which gave rise to a right of action in contract or tort, and the statutory period began to run at that time, and not when the actual damage results or is ascertained, as the plaintiff contends. The damage sustained by the wrong done is not the cause of action; and the statute is a bar to the original cause of action although the damages may be nominal, and to all the consequential damages resulting from it though such damages may be substantial and not foreseen." (p. 581.)

In the case of *Conklin v. Draper*, 229 N. Y. App. Div. 227, 241 N. Y. Supp. 529, the court, in a similar case, held:

"An action for malpractice, based upon the leaving of arterial forceps within the plaintiff's abdominal cavity by the defendant after removing the appendix, commenced within two years after the discovery of the forceps by

means of a second operation, but more than four years after the first operation, is barred by the two-year statute of limitations contained in section 50 of the civil practice act. The statute began to run from the date of the original operation and not from the time of the discovery of the malpractice."

To the same effect is *Gum v. Allen,* 119 Cal. App. 293, 6 P. 2d 311; also *Weinstein v. Blanchard,* 109 N. J. L. 332, 162 Atl. 601; also *Albert v. Sherman,* 167 Tenn. 133, 67 S. W. 2d 140. It should be noted that these authorities hold that the action was barred on the ground that the cause of action was the wrongful act and accrued when that act was committed rather than when the consequential damages arose. Here the wrongful act was committed when the tenth day passed and the last bead was not removed. The cause of action accrued then and the statute had run long before this action was brought.

Plaintiff next points out that one theory upon which the petition was drawn was that in it he seeks damages on account of the wrongful death of his wife. He argues that since the statute (R. S. 60-3203) provides that such an action may be brought by the personal representative or next of kin within two years after the death, he had until two years after the death of deceased to bring the action for as much of his damages as is for wrongful death. The part of that statute with which we are concerned is as follows:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission."

A similar statute was passed on in *Seaboard Air Line Ry. v. Allen,* 192 Fed. 480. There the injury had occurred about four years before the man died. After his death and within the time fixed by the wrongful-death statute his personal representative brought an action. The court held since the decedent had not brought his suit for over four years after the accident his right to sue was barred by the statute of limitations, and, therefore, the action by his personal representative was barred. (See, also, 17 C. J. 1239, sec. 86.)

In the case of *Mellon v. Goodyear,* 277 U. S. 335, 48 S. Ct. 541, the supreme court reviewed the holding of this court in the case of *Goodyear, Administratrix, v. Railway Co.,* 114 Kan. 557, 220 Pac. 282. The court held in effect that where an injured railway employee could not maintain an action for injuries prior to his death his personal representative could not maintain it after his death.

The holding of this court was that the federal employers' liability act should be construed in the same manner as Lord Campbell's act.

We have concluded that where there was a defense available against an action which might have been brought by an injured person in his lifetime the same defense is available to the defendant in an action brought on account of wrongful death resulting from the same injury. It follows, therefore, that the statute of limitations had run against the right of action of plaintiff and that the demurrer of defendant to the petition of plaintiff should have been sustained.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.

SMITH, J. (dissenting): I am unable to agree with the conclusion reached by the majority. I do not place my dissent on the fact that the action is claimed to be one founded on fraud. My idea is that the defendant owed the duty to the plaintiff to take the beads out, but that this duty did not terminate on the tenth day nor when the patient was discharged from the hospital and from the care of the defendant. The duty was a continuing duty, and the failure to perform it continuing negligence upon which defendant could have been sued and held liable on any day from the time the beads were left in. There is sound authority for this rule. (See 37 C. J. 863.) The authorities that are relied upon to support the conclusion of the majority are precedents only and not much else. They are not founded on sound logic nor on any principles of common justice. My judgment will not permit me to approve a decision whereby a surgeon can set an agency, such as radium, in action in the body of a person and escape liability because it takes more than two years for the dangerous substance to accomplish the inevitable end, the death of the patient.