(936 P.2d 784)
No. 75,665

DEANNA ROBINSON, *Appellant*, v. NASREEN B. SHAH, M.D., *Appellee.*

Opinion filed
April 18, 1997.

Thomas E. Hayes and Benjamin M. Kieler, of Hayes & Kieler, L.L.C., of Overland Park, for the appellant.

William Tinker, Jr., of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for the appellee.

Before LEWIS, P.J., KNUDSON, J., and JOHN J. BUKATY, JR., District Judge, assigned.

LEWIS, J.: The plaintiff appeals from a ruling by the trial court that her fraud and medical malpractice causes of action against the defendant were barred by the statute of limitations. The trial court's ruling was accompanied by the realization of all concerned that this case required the attention of the appellate courts. The facts in this action are particularly egregious and call into question the relationship between fraud and the statute of limitations. Procedurally, the plaintiff's lawsuit was dismissed as barred by the statute of limitations prior to a trial on the merits. Under those circumstances, all of the parties agree that we must accept the facts as presented by the plaintiff as true. Those facts are set out in the trial court's journal entry and have been adopted by this court as true and correct for the purposes of this appeal. We hasten to point out, however, that no trial on the merits has been had. It is possible, therefore, that the actual facts as proven at trial may not be precisely as we must assume them to be at this point. Nevertheless,

for the purposes of this appeal, the plaintiff's version of the facts is assumed to be true and correct.

The plaintiff was a longtime patient of Dr. Nasreen B. Shah, M.D., hereinafter referred to as the defendant, and placed her physical well-being in the hands of that physician from 1975 to 1986. During that period of time, the defendant treated the plaintiff for various gynecological disorders.

On November 9, 1983, the defendant performed a total abdominal hysterectomy and bilateral salpingo-oophorectomy on the plaintiff. Approximately 1 week after the surgery, the plaintiff was discharged from the hospital and was assured that there were no complications or potential problems which might arise as a result of the surgery.

On the day after the plaintiff was discharged from the hospital, she began to experience abdominal distress. She consulted the defendant about these symptoms, and the defendant ordered x-rays to be taken of the plaintiff's kidneys, ureter, and bladder in an effort to explain her discomfort.

The x-rays were taken at St. Joseph Memorial Hospital and were read and interpreted by Dr. C. J. Cavanaugh, presumably a radiologist associated with that facility. Dr. Cavanaugh was of the opinion, after reading the x-rays, that they showed the presence of surgical sponges which had been left in the plaintiff's abdomen after surgery. Dr. Cavanaugh called the defendant and reported the findings of the x-rays and, in addition, sent to the defendant a copy of a written report which also reflected those findings.

Incredibly and shamefully, the defendant fraudulently concealed from the plaintiff the findings of these x-rays. Instead of being truthful, the defendant deliberately lied to the plaintiff and told her the x-rays were negative and that there were no apparent or unusual complications from the recent abdominal surgery, and she assured the plaintiff that she did not require further treatment. At no time did the defendant reveal to the plaintiff the fact that she had left surgical sponges in the plaintiff's abdomen after the most recent surgery.

Over the next several years, the plaintiff continued to see the defendant for gynecological check-ups. She continued to experi-

ence abdominal pain and discomfort. The defendant, however, continued to conceal from the plaintiff the existence of the surgical sponges left in the plaintiff's abdomen.

The plaintiff ceased seeing the defendant as her physician in 1986. However, she consulted other physicians and continued to experience frequent pain and discomfort in her abdomen as well as intestinal, urological, and gynecological problems. Although the plaintiff brought her complaints to the attention of other physicians, no one was able to diagnose the source of her problems.

In 1993, one of the physicians attending to the plaintiff's problems diagnosed a pelvic mass, which he felt could be causing some discomfort. On August 11, 1993, the plaintiff underwent pelvic sonograms and x-rays, which revealed the existence of retained surgical sponges.

The plaintiff contends the defendant, from and after November 18, 1983, had actual knowledge of the presence of retained surgical sponges in the plaintiff's abdomen and well knew the potential of future complications which could arise from this condition. Despite this knowledge, the plaintiff contends, the defendant fraudulently concealed the existence of this condition from the plaintiff.

The trial court found that the plaintiff was unable to discover the fact that the defendant had negligently left surgical sponges in her abdomen and that this fact was fraudulently concealed from the plaintiff, who did not discover the defendant's fraud until August 11, 1993.

This action was filed on August 16, 1994.

The plaintiff's legal problems are obvious. According to her factual contentions, in 1983, the defendant left surgical sponges in the plaintiff's abdomen and knew she had done so no later than November 18, 1983. Despite such knowledge, the defendant fraudulently concealed the existence of the retained sponges from the plaintiff and lied to her about the nature of her condition. It was not until August 11, 1993, that the plaintiff knew or could have known what the defendant had done. This is a passage of nearly 10 years. All of the related statutes of limitations and statutes of repose had expired. The plaintiff was without a remedy, and the defendant was home free unless an exception exists to preserve her

causes of action against the defendant. If no such exception exists, the defendant will be rewarded for her fraud in concealing from the plaintiff that surgical sponges had been left in her abdomen. Over 10 years have passed since the defendant's act of fraudulent concealment. The trial court held that all of the plaintiff's potential legal remedies against the defendant have been outlawed by the statute of limitations. This decision is a direct result of the defendant's fraudulent concealment of the plaintiff's condition. The defendant now seeks to use the statute of limitations as a shield from the consequences of her negligence and her fraud. This is an intolerable situation which we ought not ignore. We do not believe the law is powerless to correct such an injustice. We must decide whether the defendant is to be rewarded for her fraudulent conduct.

## STATUTES OF LIMITATION

As we view this lawsuit, the following statutes of limitation and statutes of repose are relevant:

K.S.A. 60-513:

"(a) The following actions shall be brought within two years:

. . . .

"(7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract.

. . . .

"(c) A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action.*" (Emphasis added.)

K.S.A. 60-513:

"(a) The following actions shall be brought within two years:

. . . .

(3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered.

. . . .

"(b) Except as provided in subjection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in *no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.*" (Emphasis added.)

The plaintiff's causes of action against the defendant are based on medical malpractice and fraud. It is perfectly obvious from a reading of the statutes that each cause of action must be brought within 2 years of its accrual and that the medical malpractice statute of repose is 4 years, whereas the fraud statute of repose is 10 years. It does not require great legal insight to realize that the plaintiff is dead in the water unless the fraudulent conduct on the part of the defendant either tolled or somehow extended the periods of limitations.

## IS THERE A CAUSE OF ACTION FOR FRAUD?

The relevant portions of count II of the plaintiff's petition read as follows:

"2. That defendant Shah fraudulently concealed the finding of sponges in the plaintiff's November 18th, 1983, x-ray, breached her fiduciary duty of full disclosure and made affirmative misrepresentations to plaintiff that there were no complications or potential complications resulting from the November 9, 1983 surgery, when, in fact, defendant Shah had actual knowledge of the presence of surgical sponges in the [plaintiff's] abdomen and of the potential [of] future complications resulting from this condition.

"3. That the above referenced tortious conduct of defendant deprived plaintiff of her right to prompt medical treatment, thereby causing her prolonged and severe pain, suffering, physical disabilities, and related loss of time, income and enjoyment of life. Further, defendant's tortious conduct deprived plaintiff of her right to timely seek and recover legal damages for the defendant's medical negligence causing her the loss in opportunity to utilize and invest such damages."

We see no reason why a defendant should not be held responsible for a fraud which caused a patient to allow his or her malpractice cause of action to become barred by the statute of limitations. We further see no reason why a defendant should not be

held responsible for fraudulently causing a patient not to seek prompt medical treatment for his or her condition, which results in his or her suffering needless years of prolonged, severe, and unnecessary pain and discomfort. The plaintiff's petition alleges that the defendant's fraud caused her those damages.

In this opinion, for obvious reasons, we will focus on the fact that the defendant fraudulently caused the plaintiff to lose her malpractice cause of action.

The law in Kansas has long permitted a party who has lost a cause of action by virtue of the fraud of another to maintain an action for fraud against the perpetrator for the loss of a cause of action. In *Clark v. Amos*, 144 Kan. 115, 116, 58 P.2d 81 (1936), our Supreme Court dealt with such a cause of action. The court commented as follows:

"Touching the trial court's ruling on defendants' demurrer, *it is the law that where a person has a cause of action against an adversary and is duped through misrepresentation of fact by the latter whereby the injured party permits the statute of limitations to bar his action, he can maintain an action for deceit against the wrongdoer under some circumstances, not on account of the original negligence but on account of the subsequent wrongdoing—the misrepresentation of fact which deceived the injured party—with the consequence that the time bar ran against the original action. (Pierson v. Holdridge, 92 Kan. 365, 140 Pac. 1032; Cramer v. Railways Co., 112 Kan. 298, 211 Pac. 118.) While there is a diversity of opinion on this subject (L. R. A. 1917F 720) the Kansas view accords with Rochester Bridge Co. v. McNeil, 188 Ind. 432, 122 N.E. 662; Urtz v. N. Y. C. & H. R. R. R. Co., 202 N. Y. 170, 95 N. E. 711, and Hobaica v. Byrne, 214 N. Y. S. 759, 761; Desmarais v. Company, 79 N. H. 195, 107 Atl. 491.*" (Emphasis added.)

See Annot. 33 A.L.R.3d 1077, 1085.

The plaintiff seeks to prosecute the type of cause of action approved in *Clark v. Amos*. If she is not permitted to do so, injustice is the result. As our Supreme Court said in *Cramer v. Railways Co.*, 112 Kan. 298, 304, 211 Pac. 118 (1922): "Public policy should, and we think does, prevent such an injustice." We agree.

As we perceive it, the question here is why a physician cannot be sued for defrauding a patient out of a cause of action. In count II of the plaintiff's cause of action, she seeks recovery not for the original negligence or malpractice by the physician but for the fraud of the physician who deceived her "with the consequence

that the time bar ran against the original action." *Clark*, 144 Kan. at 115. As we view it, the fraudulent concealment in this case was not malpractice, it was fraud, pure and simple. For this reason and the reasons which follow, we conclude the trial court erred in dismissing the plaintiff's lawsuit as untimely as to the cause of action for fraud, and we reverse that decision and remand the matter for a trial on the merits.

In *Umbehr v. Board of Wabaunsee County Comm'rs*, 252 Kan. 30, Syl. ¶ 4, 843 P.2d 176 (1992), fraud is defined as follows: "A fraudulent act generally is comprised of anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another." See *Tetuan v. A. H. Robins Co.*, 241 Kan. 441, Syl. ¶ 3, 738 P.2d 1210 (1987); *Goben v. Barry*, 234 Kan. 721, Syl. ¶ 8, 676 P.2d 90 (1984).

In *Moore v. State Bank of Burden*, 240 Kan. 382, 389, 729 P.2d 1205 (1986), we find the following:

"The broad outlines of fraud are said to include any cunning, deception, or artifice used, in violation of legal or equitable duty, to circumvent, cheat, or deceive another. The forms it may assume and the means by which it may be practiced are as multifarious as human ingenuity can devise, and the courts consider it unwise or impossible to formulate an exact, definite, and all-inclusive definition of the action. It is synonymous with, or closely allied to, other terms indicating positive and intentional wrongdoing, *but is distinguishable from mistake and negligence. Citizens State Bank v. Gilmore*, 226 Kan. 662, Syl. ¶ 2, 603 P.2d 605 (1979). Actual fraud is an intentional fraud, and the intent to deceive is an essential element of the action. Constructive fraud, however, is a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty of purpose or intent to deceive is necessary. *Andres v. Claassen*, 238 Kan. 732, Syl. ¶ 2, 714 P.2d 963 (1986). A suppression or concealment of the truth is not at all times such fraud or deceit as will be relieved against. *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 760, 576 P.2d 674 (1978). There must be a concealment of facts which the party is under a legal or equitable duty to communicate and in respect of which he could not be innocently silent. *DuShane v. Union Nat'l Bank*, 223 Kan. at 759." (Emphasis added.)

In *Albers v. Nelson*, 248 Kan. 575, Syl. ¶ 5, 809 P.2d 1194 (1991), the court defined fraud as follows:

"Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage."

See *Slaymaker v. Westgate State Bank*, 241 Kan. 525, Syl. ¶ 2, 739 P.2d 444 (1987).

We believe that the allegations set forth in count II of the plaintiff's petition set forth a classic cause of action for fraud. It is beyond question that the defendant's lies to the plaintiff were made to deceive her and conceal the defendant's negligence. It cannot be seriously argued that the defendant did not have a legal and an equitable duty to tell the plaintiff the truth. This duty was breached. The breach of this duty by the defendant caused, the plaintiff alleges, the plaintiff to lose a valuable cause of action and suffer 10 years of needless pain and discomfort.

We think it is important to note that the defendant in this case is not alleged to either have been mistaken or negligent in her failure to disclose the truth to her patient. She is accused of deceit and lies amounting to positive and intentional wrongdoing. As pointed out above, not every concealment of the truth is actionable. However, when such concealment violates a legal or equitable duty, it becomes actionable and fraudulent.

In order to prove fraud, the following facts must be shown: (1) an untrue statement known to be untrue by the party making it and made with the intent to deceive; (2) justifiable reliance by the victim on the truth of the statement; (3) damages as a result of that reliance. See *Albers*, 248 Kan. at 579; *Slaymaker*, 241 Kan. 526.

The plaintiff's petition sets forth sufficient allegations to state a cause of action for actual fraud against the defendant. We refuse to recognize any distinction between the fraud which separates the victim from his or her money and the fraud which deprives a victim of a cause of action for malpractice.

The defendant argues, however, that one cannot have a fraud cause of action against a physician. The premise for this argument is that when a physician defrauds a patient out of a cause of action for malpractice, it is not fraud, it is simply more malpractice. Thus, according to the defendant, the physician may hide behind his or

her fraudulent conduct and enjoy the benefits of that fraud because it is not fraud, it is malpractice.

We do not concede that the law is so unjustly weighted on the side of the wrongdoer. It seems senseless for defendant to argue that the "gravamen" of the plaintiff's cause of action is malpractice when that action, according to the defendant, has been eliminated by the lies and fraud of the defendant herself. The plaintiff seeks to recover damages caused by the fraudulent loss of her cause of action for malpractice.

The most recent decision in this area is that written by Justice Abbott in *Bonin v. Vannaman*, 261 Kan. 199, 929 P.2d 754 (1996). The defendant strongly urges us to conclude that *Bonin* controls and requires us to affirm the decision of the trial court. We do not agree, and we decline the invitation.

In *Bonin*, the plaintiff sued a physician for malpractice and fraud and sued her parents for negligence. The basis for the allegations of fraud was the failure of the physician to diagnose a condition known as scoliosis. There were no allegations in *Bonin* that the defendant had deliberately lied to the plaintiff or had fraudulently deceived the plaintiff out of improper motives. There was no element of scienter in *Bonin*. There were no facts indicating any motivation for the defendant to lie in *Bonin*. There were no benefits flowing to the defendant from lying to the plaintiff in *Bonin*. The condition of the plaintiff was not caused by the negligence of the physician, and the disclosure of that condition would not have placed the physician in jeopardy of being sued. In short, defendant in *Bonin* did not lie to avoid responsibility for his own fault, and did not lie at all. *Bonin* differs significantly factually from this case and does not control.

In *Bonin*, as here, the issue was the statute of limitations. Eighteen years had passed from the alleged accrual of the cause of action and the filing of the petition. The trial court concluded that *Bonin* was actually a malpractice action, grounded in negligence, and not a cause of action for fraud. The Supreme Court agreed, and we agree with the Supreme Court in its decision in *Bonin*.

The Supreme Court in *Bonin* concluded only that Bonin's cause of action was grounded in negligence and not in fraud. The court

did not hold that a physician can *never* be liable for fraud. Quite the contrary, Justice Abbott carefully limited the decision when he said:

> "This does not mean that a doctor can never be liable for fraud or breach of contract. Instead, this simply means that a fraud or breach of contract cause of action can only be based upon a physician's misconduct if that misconduct is beyond a breach of the legal duty which every doctor has the obligation to uphold. [Citation omitted.]" (Emphasis added.) 261 Kan. at 210.

The fact is, there were no allegations of actual fraud in *Bonin*. The plaintiff's cause of action was grounded in negligence, and the claims of fraud were merely a lawyer's attempt to avoid the statute of limitations. The "fraud" of the defendant in *Bonin* was a failure to diagnose the plaintiff's scoliosis. The claim was clearly grounded in the defendant's negligence in failing to diagnose.

That is not true in the instant matter. This is not a case which involves the failure to diagnose a condition shown by the x-ray report. This is a case where the defendant lied to the plaintiff with the intent to deprive the plaintiff of a malpractice action. The falsehoods have been successful to this date, the fraud has been complete to this date, and in our judgment, it was actionable.

Our decisions have indicated that substance prevails over form. *Travis v. Bishoff*, 143 Kan. 283, 285, 54 P.2d 955 (1936). What this means is that if the cause of action is really one for malpractice, just calling it a cause of action for fraud does not change its true nature. This is illustrated in *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374-76, 552 P.2d 885 (1976), in which a tort action was being called a contract action:

> "The nature of a claim—whether it sounds in tort or contract—is determined from the pleadings [citations omitted] and from the real nature and substance of the facts therein alleged. 1 C.J.S. Actions, § 35, p. 1076. . . .
>
> . . . .
>
> "Certain duties and obligations are imposed upon physicians and hospitals by law. Breach of such duty by a physician is malpractice, and an action for damages for malpractice is one in tort, even though there was a contract, express or implied, for employment. [Citation omitted.] Similarly an action for damages against a hospital for negligence, *i.e.*, for breach of duties imposed by law, sounds in tort. This is true though there may be a contract between the parties.

. . . .

"In *Tefft v. Wilcox*, 6 Kan. 46, 61 [1870], this court held that a physician is obligated to his patient under the law to use reasonable and ordinary care and diligence in the treatment of cases he undertakes, to use his best judgment, and to exercise that reasonable degree of learning, skill, and experience which is' ordinarily possessed by other physicians in the same or similar locations. We have continued to impose those duties upon physicians. See PIK Civil 15.01 and cases there cited. A physician also has the duty to make a reasonable disclosure to the patient of pertinent facts within his knowledge relating to proposed treatment, in order that the patient may intelligently consent or refuse the treatment. [Citation omitted.]

. . . .

". . . What plaintiffs are complaining about is that the treatment provided was negligent—all of the needed treatment was not furnished, and that which was furnished was incomplete, incompetent, and unauthorized. In other words, the hospital and the physicians failed to exercise that reasonable care, skill, and diligence which the law requires of hospitals and physicians—regardless of any express contract therefor between the parties.

"Clearly the action sounds in tort, and under that theory the defendants are immune from liability. The general rule is that a plaintiff will not be permitted to characterize a tort action as one in contract in order to avoid the bar of the statute of limitations or governmental immunity. *Travis v. Bishoff*, 143 Kan. 283, 54 P.2d 955 [1936]; *Talbot v. Waterbury Hospital Corp.*, 20 Conn. Sup. 149, 164 A.2d 162 (1960); *Billings v. Sisters of Mercy of Idaho*, 86 Idaho 485, 389 P.2d 224 [1964]; *Mamunes v. Williamsburg Gen. Hosp.*, 28 App. Div. 2d 998, 283 N.Y.S.2d 457 [1967]; and, see, *Yeager v. National Cooperative Refinery Ass'n*, [205 Kan. 504, 470 P.2d 797 (1970)]."

See *Bonin*, 261 Kan. at 209.

The plaintiff in count II is not complaining about negligence, incompetence, or unauthorized treatment. She is complaining about being lied to and misled by someone she trusted and by someone who was obligated to tell her the truth. It should not matter if that someone is a physician, lawyer, banker, or magazine salesman. Fraud is fraud, and we reject the notion that physicians are not answerable for it as are the other members of our society.

The obligation to tell the truth to people who depend on you to do so is not an exclusive obligation of a physician. It is an obligation shared with fiduciaries, with bankers, with lawyers, with shoe salesmen, and with myriad other members of our society. We reject the notion that because a physician has an obligation to tell his or her

patients the truth that any suit against a physician for violating that duty can only be one for malpractice and not for fraud.

There is no logic and no justice in a conclusion that when a physician misleads someone, it is malpractice, but when a banker does so, it is fraud. The duty to speak honestly to those who trust you and to not engage in fraud or deception are duties shared by the medical profession with myriad members of our society. Physicians are not immune from the consequences of their fraudulent conduct.

We hold that where a patient has a cause of action against a physician for malpractice and has been duped by the intentional and knowing lies of the physician to the extent the patient in reliance on the fraudulent misrepresentation permits the statute of limitations to bar his or her action, the patient can maintain an action for fraud against the physician, not on account of the original negligence or malpractice but on account of the fraudulent actions of the physician which deceived the patient with the consequence that the time bar ran against the original action.

## STATUTE OF LIMITATIONS AS TO FRAUD

Having held that the plaintiff has set forth a valid cause of action for fraud against the defendant, the next question is whether the cause of action was timely filed.

K.S.A. 60-513(a)(3) establishes a limitation of 2 years within which to bring an action for relief on the ground of fraud. It goes on to provide that such a cause of action shall not be "deemed to have accrued until the fraud is discovered." In this case, the cause of action was filed within 2 years of the discovery of fraud. However, 60-513(b) goes on to provide that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." The action in this case was filed more than 10 years after the fraud was perpetrated. The question is whether the statute of repose was also tolled by the defendant's concealment of the cause of action.

It is a relatively simple manner to conclude that the running of the statute of limitations is tolled by concealment of the fraud. The statute says that it is and so do the cases. See *Dalton v. Lawrence*

*National Bank*, 169 Kan. 401, Syl. ¶ 6, 219 P.2d 719 (1950). In *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. 325, 331-32, 362 P.2d 841 (1961), the court said:

"The appellant contends that concealment of the decedent's fall from bed until the 2nd day of June, 1956, tolled the running of the statute until such date, and that the action which was filed on the 6th day of May, 1958, was therefore within the period of two years.

"In an action for relief *on the ground of fraud* the statute of limitations does not start to run until the plaintiff discovers the fraud, or until he learns such facts as would lead a reasonably prudent person to investigate. (*Dalton v. Lawrence National Bank*, 169 Kan. 401, 219 P.2d 719; and *McWilliams v. Barnes*, 172 Kan. 701, 242 P.2d 1063.) But the cause of action in count I is on the ground of negligence, the negligence of the hospital in permitting the decedent to fall from his bed, and not on the ground of fraud.

"Under the present law of Kansas fraud and concealment toll the running of the statute of limitations only when relief is sought on the ground of fraud. The rule applies only when the party against whom the bar of the statute is interposed is required to allege fraud in pleading his cause of action, or to prove fraud to entitle him to relief."

It is not the 2-year statute of limitations that gives us concern but the 10-year statute of repose. This action was begun within 2 years of the discovery of the fraud but more than 10 years after the fraud was perpetrated. The effect of a statute of limitations and a statute of repose are exactly the same. Both statutes operate to extinguish a cause of action after a certain period of time has expired. However, our Supreme Court has seen fit to define and distinguish the two statutes. In *Bonin*, 261 Kan. 199, Syl. ¶ 2, we find the following:

"A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. It is substantive."

The definition in *Bonin* was first developed in *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992). In *Bonin*, Justice Abbott posits:

"[I]t is not clear that the fraudulent concealment doctrine applies to a statute of repose in the same manner that it applies to a statute of limitations. See *Harding*,

250 Kan. at 668. We need not decide this question because even if the fraudulent concealment doctrine does apply to statutes of repose, the doctrine only tolls the time in which a fraud action may be filed if the plaintiff's claim for relief is validly grounded in fraud on its face." 261 Kan. at 207.

Since the court in *Bonin* concluded no valid fraud action was pled, it did not reach the question proposed.

In this case, we have concluded that a valid cause of action for fraud has been pled. We also hold that the fraudulent concealment by the defendant tolled not only the statute of limitations but the statute of repose as well.

Our decision is based on common sense and logic. There is no reason grounded in logic to presume that the fraudulent concealment of a defendant will toll a statute of limitations but not a statute of repose. If the basis of the fraudulent concealment doctrine is to deprive a defendant of the benefit of his fraud, then it must apply to a statute of repose with the same vigor it applies to a statute of limitations. In this case, the reason neither statute was complied with was the fraud of the defendant. It is illogical and nonsensical to say that the defendant's fraud tolls the statute of limitations but not the 10-year statute of repose.

The State of Iowa has a malpractice statute of limitations which contains a statute of repose which is nearly identical to ours. The Supreme Court of Iowa in *Koppes v. Pearson*, 384 N.W.2d 381 (Iowa 1986), held that fraudulent concealment of a cause of action tolls its statute of limitations and its statute of repose. The Iowa court justified its decision by observing:

"We think it inconceivable that the Iowa legislature intended section 614.1(9) to bar malpractice actions against providers of medical care whose fraudulent concealment of the facts have themselves caused the delayed filing which the statute was designed to prevent. *The legislature certainly did not intend such a harsh and unreasonable result.*" 384 N.W.2d at 387.

We agree. We cannot imagine that the 10-year statute of repose was written to protect those who could conceal the fact of their fraud beyond the 10-year limitation of time.

We hold that the plaintiff has pled a valid cause of action for fraud against the defendant and that the fraudulent concealment of the defendant tolled both the 2-year statute of limitations and

the 10-year statute of repose relating to causes of action for fraud until such time as the fraud was discovered by the plaintiff.

## FRAUDULENT CONCEALMENT OR EQUITABLE ESTOPPEL?

In a majority of states that have considered the issue, the statute of limitations in a malpractice action is tolled by the fraudulent concealment of the cause of action by the physician. Annot. 70 A.L.R.3d 7. As with the statute of repose, on causes of action for fraud, we see no reason why the statute of repose in a malpractice action would not be tolled as well as the statute of limitations. In fact, the Iowa decision of *Koppes*, 384 N.W.2d 381, dealt with a statute of repose in a malpractice action.

One example of a fraudulent concealment case is *Alford v. Summerlin*, 362 So. 2d 103, 105 (Fla. Dist. App. 1978). In that case, due to the negligence of the defendant, a child died as the result of a ruptured appendix. The defendant, a physician, knew that the appendix had ruptured and so stated in his operative report. However, when asked by the child's father, the physician lied and told the father that the appendix had not ruptured. By the time the child's family discovered the truth, the statute of limitations had run. The *Alford* case is very similar factually to the instant matter. In Florida, it was held that the defendant's fraud had tolled the statute of limitations:

"The statute of limitations is tolled when it can be shown that fraud has been perpetrated upon an injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering the injury. [Citation omitted.] The fraudulent concealment of facts showing negligence will toll the statute of limitations until the fraudulent concealment can be discovered through the exercise of reasonable diligence. [Citation omitted.] *To hold otherwise would be a harsh rule and prevent relief to an injured party who was without notice during the statutory period of any negligent acts that might have caused injury.*" (Emphasis added.) 362 So. 2d at 105.

In *Lakeman v. LaFrance*, 102 N.H. 300, 303, 156 A.2d 123 (1959), the New Hampshire court explained the doctrine of fraudulent concealment as follows: "*It is well established that our courts will not countenance fraudulent conduct.* [Citations omitted.] We

refuse to presume that the Legislature intended to give a wrong-doer the advantage and benefit of his fraudulent concealment of a cause of action until the statute of limitations has run." (Emphasis added.)

We agree with the comments above. Unfortunately, Kansas law remains governed by decisions made over 60 years ago which refuse to recognize the doctrine of fraudulent concealment in malpractice cases. The leading Kansas case on this issue is that of *Graham v. Updegraph,* 144 Kan. 45, 58 P.2d 475 (1936). In Syl. ¶ 1 of *Graham,* the Supreme Court said: "Where plaintiff seeks to recover damages from a physician on account of alleged malpractice the action is on a tort; *the two-year statute of limitations applies and is not tolled by concealment of the tort by the physician."* (Emphasis added.)

It appears that in Kansas the only tort which is not tolled by fraudulent concealment is one involving medical malpractice. For reasons which, in our judgment, defy logic, the Supreme Court has continued throughout the years to refuse to apply the doctrine of fraudulent concealment to medical malpractice actions. In *McCoy v. Wesley Hospital & Nurse Training School,* 188 Kan. at 331, the court said: " 'Our statutes do not make concealment one of the grounds for tolling the statute of limitations. Perhaps that should be done, but it is the function of the legislature and not of the courts to do it.' "

This is not a philosophy recognized by most courts in the United States. The doctrine of fraudulent concealment is a doctrine applied by the courts exercising their equitable powers, and those powers do not spring from the legislature. However, we conclude that the refusal to recognize fraudulent concealment as tolling a medical malpractice cause of action continues in this state. The most recent expression by our Supreme Court was in *Bonin,* in which Justice Abbott stated: "The doctrine may not be utilized to extend the time for Amanda to file either her malpractice claim or her invalid fraud claim." 261 Kan. at 211.

We think, philosophically, that the law currently enforced in Kansas is wrong and ill-advised. Our research indicates that the issue has not been squarely faced for 60 years and that even in

*Graham,* 144 Kan. 45, the pros and cons of the fraudulent concealment doctrine were not discussed.

Despite our feelings on the matter, we recognize that we are not empowered to reverse or alter prior decisions of our Supreme Court. This is particularly true where the court shows no signs of being ready to abandon its prior decisions even though we may consider those decisions to be ill-advised. While we strongly believe that the doctrine of fraudulent concealment in tolling a malpractice statute of limitations and statute of repose should be employed in this state, we are not at liberty to do so.

However, we believe that a more focused rule should be employed in this case to prevent the law from being successfully used as a vehicle for fraud. We refer to the doctrine of equitable estoppel. In *Kern, by and through Kern v. St. Joseph Hosp.*, 102 N.M. 452, 455, 697 P.2d 135 (1985), the New Mexico court expressed sentiments with which we agree in discussing a case involving fraudulent concealment:

> "The doctrine is based not upon a construction of the statute but rather upon the principle of equitable estoppel. *Corbert v. Waitt,* Ind. App. 445 N.E. 2d 100 (1982). *The theory is premised on the notion that the one who has prevented the plaintiff from bringing suit within the statutory period should be estopped from asserting the statute of limitations as a defense.*" (Emphasis added.)

Our Supreme Court appears to be convinced that tolling of the statute of limitations is a legislative prerogative. While that may be true, it provides no obstacle to the employment of the doctrine of equitable estoppel under the circumstances shown. Equitable estoppel does not depend upon legislative authority; it is an inherent power of the courts used to punish unconscionable conduct and estop a guilty party from taking advantage of his or her fraudulent conduct. Equitable estoppel is a way of saying that the statute of limitations and the statute of repose are valid and would be absolute defenses to this action but because of your conduct as a litigant, you, and only you, will not be permitted to raise those defenses.

Our Supreme Court has indicated that the use of estoppel in cases of concealment of a cause of action is permissible. In *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. at 331, the

plaintiff had fallen out of bed in the hospital while he was under anesthetic. The hospital had concealed the fact of the fall from the plaintiff but the fall was discovered prior to the running of the statute of limitations. The plaintiff sought to invoke the doctrine of estoppel to prevent the defendant from using the statute of limitations as a defense. In holding that the use of estoppel was inappropriate under the circumstances, the court said:

"Where a hospital conceals from a patient the fact that he has fallen from bed while under the influence of sedation and anesthetics for approximately three and one-half months, when the fact is discovered by the patient's physician and disclosed to the patient, the doctrine of equitable estoppel *in pais* is not available to interrupt the running of the statute of limitations, since the concealment ceased to operate in sufficient time to permit the filing of the action within time, and there was no affirmative inducement to further delay bringing the action." 188 Kan. 325, Syl. ¶ 2.

The court implies that in a proper case, where the wrong was not discovered within the running of the statute of limitations, equitable estoppel would be an appropriate doctrine to be invoked on the part of the defrauded plaintiff.

The appellate courts of Kansas have long employed equitable estoppel to prevent litigants from benefitting from wrongful actions.

In *Bowen v. Westerhaus*, 224 Kan. 42, 45-46, 578 P.2d 1102 (1978), the court reviewed the law concerning equitable estoppel as follows:

"The plaintiffs pled that defendants were estopped to take advantage of the statute. The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. (*Maurer v. J.C. Nichols Co.*, 207 Kan. 315, 485 P.2d 174 [1971].)

"This court has further said:

" 'The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction.' (*Browning v. Lefevre*, 191 Kan. 397, Syl. ¶ 2, 381 P.2d 524 [1963].)

> " '. . . One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement. . . .' (*In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 [1976].)
>
> " '. . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. . . .' (*United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 [1977].)"

In *Rex v. Warner*, 183 Kan. 763, 771-72, 332 P.2d 572 (1958), our Supreme Court stated:

> "It is a legal maxim well understood that nothing can interrupt the running of the statute of limitations, and it is commonly stated without any qualification. Courts, however, have ingrafted upon such statutes an exception based upon estoppel. Generally speaking, actual fraud in the technical sense, bad faith, or an attempt to mislead or deceive is not essential to create such an estoppel; to invoke the doctrine, the debtor or defendant must have done something that amounted to an affirmative inducement to plaintiff to delay bringing the action. [Citations omitted.]
>
> ". . . It was within plaintiff's domain to ascertain why the defendants refused to perform and where the means of knowledge with respect to his rights or liabilities are available to him, he may not ignore the requirement of due care and at the same time invoke the doctrine of equitable estoppel. That doctrine is not available for the protection of one who has suffered loss solely by reason of his own acts or omissions. Equity aids the vigilant and not those who slumber on their rights. (30 C.J.S., Equity, § 100, p. 499.)"

This court, in *Coffey v. Stephens*, 3 Kan. App. 2d 596, 598, 599 P.2d 310 (1979), said:

> "One general statement of the doctrine which runs throughout the cases in which it is asserted is that a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute has run, will be precluded from relying on the bar of the statute. [Citations omitted.]"

In *Klepper v. Stover*, 193 Kan. 219, 221-22, 392 P.2d 957 (1964), the court stated:

> "Generally speaking, in equity where mistake is sought to be corrected, limitation statutes do not begin to run on the cause of action until the time when the mistake

is discovered or when by use of due diligence it ought to have been discovered. (34 Am. Jur., Limitation of Actions, § 174, p. 139.) This is particularly true where a mistake is the basis of the gravamen of the action (53 C. J. S., Limitations of Actions, § 91, b., p. 1067, c., p. 1069.) Mistake and fraud are closely akin to each other. To apply the doctrine of estoppel to defendants here upon the ground of the statute of limitations requires an element of deception upon which the plaintiff acted in good faith in reliance thereon to his prejudice whereby he failed to commence the action within the statutory period. Whether the acts, promises, or representations of defendants lulled plaintiff into a sense of security, preventing him from filing suit before the running of the statute is a question of fact. (34 Am. Jur., Limitation of Actions, § 412, pp. 324, 325.)

"If a defendant, electing to rely on the statute of limitations, has previously by deception or in violation of his duty toward plaintiff, caused him to subject his claim to the statutory bar, defendant must be charged with having wrongfully obtained an advantage which the court will not allow him to hold, and this can be done by his silence when under an affirmative duty to speak. (53 C. J. S., Limitations of Actions, § 25, Estoppel, pp. 963, 964.)"

As can be noted from the cases cited above, this is far from a case of first impression. The doctrine of equitable estoppel has been frequently used to prevent a defendant from relying on the statute of limitations as a defense where the defendant's fraudulent or wrongful conduct has caused the plaintiff not to file suit within the period of the statute of limitations. See Annot., 43 A.L.R.3d 429.

We conclude this is an appropriate case for application of the doctrine of equitable estoppel. We hold that the defendant in a malpractice case cannot take advantage of a defense based on the statute of limitations or the statute of repose where the defendant's own fraudulent concealment has resulted in the delay in discovering the defendant's wrongful actions. Under such facts, a defendant is equitably estopped from raising the defenses of the statute of limitations and the statute of repose. See *Newton v. Hornblower, Inc.*, 224 Kan. 506, Syl. ¶ 7, 582 P.2d 1136 (1978).

Accordingly, in the event the plaintiff is able to prove, during a trial on the merits, that she was prevented from discovering that she had a cause of action against the defendant for her negligence in leaving surgical sponges in the plaintiff's abdomen by the defendant's own fraudulent conduct and misrepresentation, then, in that event, the defendant will be equitably estopped from raising

the defenses of the statutes of limitations or the statutes of repose, even though those may be, in fact, absolute defenses to the plaintiff's cause of action.

We consider our decision in this case to be one primarily based upon the facts presented. It is obvious that whether a defendant will be estopped from raising certain defenses can only be decided on a case-by-case basis. This is one of the cases in which the doctrine is appropriately applied. However, we further believe that the application of the doctrine of equitable estoppel is required in cases of this nature to prevent physicians from benefitting from their own fraudulent misrepresentation and to avoid any inference that the law would encourage and reward such behavior as is outlined in this opinion. To hold that a physician may successfully blunt a malpractice cause of action by fraudulently misrepresenting facts to a patient would be to encourage such fraudulent behavior. We do not believe that the law can or should be so manipulated, and our decision should insure that this will not happen. We hasten to add that we cannot imagine that the majority of physicians in this state would engage in the behavior illustrated in this opinion.

It is further obvious that our decision on equitable estoppel diminishes to some degree the value of the plaintiff's cause of action for fraud. However, that is a decision the plaintiff will have to make when the time comes for a trial on the merits of her claims against the defendant.

The decision of the trial court that the plaintiff's causes of action are barred by the statute of limitations and/or the statute of repose is reversed, and the matter is remanded for a trial on the merits consistent with this opinion.

Reversed and remanded.

KNUDSON, J., concurring and dissenting: I concur in the judgment but not with some of the holdings expressed in the majority opinion. Specifically, I do not agree with the holdings in paragraphs 6, 7, and 8 of the syllabus and the corresponding portions of the opinion.

I agree with the majority that the plaintiff did state a cause of action for fraudulent concealment. However, I do not agree that

the 10-year statute of repose had run. Moreover, the doctrine of equitable estoppel would not preclude the defendant from asserting the statute of repose as an absolute bar to the plaintiff's recovery.

Dr. Shah allegedly committed malpractice on November 9, 1983. On November 18, 1983, the plaintiff contends Dr. Shah knew surgical sponges had been left in her abdomen after surgery. From that time until 1986, Dr. Shah continued as the plaintiff's gynecologist, and the plaintiff continued to complain of abdominal pain. It is the plaintiff's contention that Dr. Shah fraudulently concealed what had occurred during the entire doctor-patient relationship. Because Dr. Shah had an ongoing duty to disclose the true nature of what had occurred to the plaintiff throughout the period in which Dr. Shah was her physician and ostensibly treating her for pain and discomfort arising as a result of the sponges being left in the plaintiff's abdomen, I conclude the 10-year statute of repose had not run as of August 16, 1994, when the plaintiff filed her lawsuit. In my opinion, the majority has confused the doctor's act of malpractice with the subsequent and ongoing fraudulent concealment.

If the plaintiff's cause of action for fraudulent concealment accrued on November 18, 1983, I would be required to dissent as I do not agree that the doctrine of equitable estoppel tolls a statute of repose. I believe the majority ignores the essential legal difference between a statute of limitations and one of repose. I also believe "but in no event" as used in K.S.A. 60-513(b) and (c) is plain and unambiguous, leaving no room for application of equitable estoppel.

Our appellate courts recognize the essential distinction between a statute of limitations and a statute of repose. In *Morrison v. Watkins*, 20 Kan. App. 2d 411, 423, 889 P.2d 140, *rev. denied* 257 Kan. 1093 (1995), this court examined the 10-year statute of repose in K.S.A. 60-513(b) and stated:

"Morrison asserts that the continuous representation [in an attorney-client relationship] rule tolls the statute of limitations. However, K.S.A. 1993 Supp. 60-513(b) establishes a statute of repose rather than a statute of limitations. [Citation omitted.] Statutes of repose are generally substantive and abolish a cause of action

after a specific time period, even if the cause of action may not have accrued yet. *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992). In *Harding*, the Kansas Supreme Court quoted *Menne v. Celotex Corp.*, 722 F. Supp. 662 (D. Kan. 1989), which stated that statutes of repose ' "generally lack tolling provisions" ' 250 Kan. at 662." 20 Kan. App. 2d at 423.

*Swartz v. Swartz*, 20 Kan. App. 2d 704, Syl. ¶¶ 2, 3, 894 P.2d 209 (1995), also addresses the differences between a statute of limitations and a statute of repose:

> "A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural."

> "A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not yet have accrued. It is substantive."

I conclude from the above rationale that the doctrine of equitable estoppel, a judge-made remedy, is inconsistent with the entire concept of a statute of repose.

Moreover, "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). The majority's result-oriented holding ignores this fundamental principle by suggesting the legislature could not have possibly contemplated such a result. However, my review of legislative history does not support the majority's reasoning. See *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 631 P.2d 222 (1981), for a discussion of the legislative history of K.S.A. 60-513(c) that contains the same "but in no event" phrase as in 60-513(b).

Because we have no published cases addressing the issue of whether equitable estoppel may bar application of the statute of repose, we understandably have looked at decisions from sister states that might be instructive. The majority cites and quotes from *Koppes v. Pearson*, 384 N.W.2d 381 (Iowa 1986). Clearly, that decision supports the majority's rationale.

However, the holding in *Bowlin Horn v. Citizens Hosp.*, 425 So. 2d 1065 (Ala. 1982), comes to a contrary result. In *Bowlin Horn*,

the court considered an Alabama statute which provided a 4-year statute of repose, using the "but in no event" language just as found in the Kansas medical malpractice statute of repose. 425 So. 2d at 1067. The court construed the "but in no event" language as an absolute bar, even in the presence of fraudulent concealment. I find the reasoning in *Bowlin Horn* more persuasive than that in *Koppes.*

This is an issue of first-impression in Kansas, and there are good arguments on both sides of the issue. That is another reason I conclude the applicable statute of repose should not be modified by judicial decree but rather left to the legislature for consideration of any proposed exception to the period of repose.